[No. 14080. In Bank. — March 18, 1891.]

## IN THE MATTER OF THE ESTATE OF JOSEPH BAUQUIER, DECEASED.

ESTATES OF DECEDENTS — DISQUALIFICATION OF EXECUTRIX — CLAIMING ADVERSELY TO ESTATE — "INTEGRITY" — CONSTRUCTION OF CODE. — The word "integrity" as used in section 1350 of the Code of Civil Procedure, providing that no person is competent to serve as an executor or executrix who is wanting in integrity, means soundness of moral principle and character, and is synonomous with probity, honesty, and uprightness in business relations with others; and the mere fact that a person named as executrix in a will claims property as her own, which the other legatees

insist belongs to the estate, does not, of itself, show a want of integrity, or disqualify her from serving as executrix, if the adverse claim is honestly made.

ID.— RIGHT OF EXECUTOR TO ACT — INCOMPETENCY. — At the time of admitting a will to probate, the court must appoint as executor the person who is named as such in the will, if he has petitioned therefor and is not incompetent, unless written objections have been filed, showing that the applicant is incompetent upon some one of the grounds specified in section 1350 of the Code of Civil Procedure.

ID. — STATUTORY INCOMPETENCY. — The court has no right to adjudge a person incompetent to be appointed as an executor unless he falls within one of the classes of persons expressly declared to be incompetent by statute.

ID. — WANT OF INTEGRITY — EVIDENCE. — While the court is authorized to refuse to appoint an executor named in a will for want of integrity, yet this power should not be exercised except upon clear and convincing evidence establishing such disqualifying fact.

ID. — REMOVAL OF EXECUTOR.— An executor may be removed after appointment if he does not discharge the duty of his trust faithfully and as directed by law.

ID. — APPEALABLE ORDER — DENIAL OF RIGHT OF EXECUTOR — ORDER REFUSING NEW TRIAL. — Where an issue arises upon objections by the legatees to the appointment as executrix of one named in the will as such, she having applied for letters testamentary, and a trial is had resulting in a judgment of incompetency against her, and a denial of her application, an order denying her a new trial is appealable.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial.

The facts are stated in the opinion of the court.

*J. C. Tubbs*, and *A. L. Hart*, for Appellant.

In the probate of wills the court must find the measure of its power in the provisions of the statute regulating the general subject-matter of that jurisdiction. (3 Jarman on Wills, 721, note.) The legislature has defined the cases in which the courts may interfere with the selection, by an individual, of an executor to administer upon his estate, and the cases enumerated are the only ones in which that interference can be had. (Endlich on Interpretation of Statutes, sec. 18; *Mawson* v. *Mawson*, 50 Cal. 539.) The remedy of the legatees does not consist in opposition to the granting of letters

testamentary, but consists in a proceeding in equity to determine the rights of the several parties; and the court has the power to order him to account, and if he refuses to do so, may revoke his letters and appoint another who would recover the property to the estate. (Code Civ. Proc., sec. 1436–1440.) Executors and administrators may be compelled to account for all property in their hands which belongs in law or in equity to the estate. (*Wager* v. *Wager*, 89 N. Y. 161; *Brotten* v. *Bateman*, 2 Dev. Eq. 115; 22 Am. Dec. 732; *Green's Adm'x* v. *Creighton*, 23 How. 90; *McLaughlin* v. *Bank of Potomac*, 7 How. 220; *Harding* v. *Handy*, 11 Wheat. 103; *Janes* v. *Throckmorton*, 57 Cal. 387; *Boyd* v. *Blankman*, 29 Cal. 19; 87 Am. Dec. 146; *Scott* v. *Umbarger*, 41 Cal. 411.)

*James B. Devine,* and *Johnson, Johnson & Johnson,* for Respondents.

The provisions of the code respecting new trials do not apply to a contest over the appointment of an executor or administrator. Only those sections of the Code of Civil Procedure which in their nature are applicable to probate proceedings apply to cases of this kind. (Code Civ. Proc., secs. 1713, 1714; *Estate of Moore*, 72 Cal. 335; *Estate of Sanderson*, 74 Cal. 199.) Although courts were formerly bound by the selection of the testator, yet the tendency of legislation is to enlarge their discretionary power so that dissolute or unsuitable persons may not be qualified, or if qualified, may be removed. (Schouler on Executors and Administrators, sec. 33.) The title of the executor to his office is derived rather from the law than the will. (1 Woerner on Administration, sec. 233.) There is no difference except that of residence between the qualification of an executor and an administrator. (Code Civ. Proc., secs. 1350, 1369.) And the same disabilities apply. (Crosswell on Executors and Administrators, sec. 72, 92, 104, 295; Schouler on Executors and Administrators, sec. 33,

44, note; 1 Woerner on Administration, 384.) One who holds already some other trust, whose interests conflict with those of an estate, should not be appointed administrator. (*State* v. *Reinhartt*, 31 Mo. 95; *Pickering* v. *Pendexter*, 46 N. H. 69.) The word "integrity" should be given a liberal meaning. (*McMahon* v. *Harrison*, 6 N. Y. 443; *Martin* v. *Duke*, 5 Redf. 597.) Even where there is no statutory qualifications prescribed, the court may inquire into the fitness of a petitioner for letters testamentary. (Crosswell on Executors and Administrators, secs. 86, 89.) An executor is a trustee. (Civ. Code, secs. 22, 23, et seq.; 2 Perry on Trusts, secs. 863, 864.) A contest having arisen over the right to special letters, the petitioner charged with unduly influencing testator, even though named in the will, should not be appointed. (*Cornwell* v. *Cornwell*, 1 Dem. 1; *In re Wanninger's Estate*, 3 N. Y. Sup. Ct. 137.) Or when he has interests adverse to the estate. (*Howard* v. *Dougherty*, 3 Redf. 535.) Where it is clear that the relations between the administrator and the heirs are not harmonious, and it is manifest that the interest of the administrator is adverse to that of the representatives, nothing but some controlling necessity will justify his retention as administrator. (*Kellberg's Estate*, 86 Pa. St. 129.) Rights to priority of administration may be controlled by unfitness from circumstances, as where interests of administrator are antagonistic to estate. (*Hassinger's Appeal*, 10 Pa. St. 454.) The court may remove executor when the prosecution of his claims against the estate would conflict with his duties as executor. (*Thayer* v. *Homer*, 11 Met. 110.) If the person appointed by the will has interests adverse to the heirs, he should not be appointed. (Tenn. Stats., Act of March 29, 1889, Acts 1889, c. 137, p. 274; *Drake* v. *Green*, 10 Allen, 126; *Estate of Heron*, 6 Phila. 89; *Estate of Pickens*, 16 Phila. 354; *Bieber's Appeal*, 11 Pa. St. 163.) That the objectors may have a concurrent remedy is no reason why one who asserts hostile claims

to one half of decedent's estate should be appointed executrix. (*Andrews* v. *Tucker*, 7 Pick. 250; 1 Woerner on Administration, sec. 269; *Estate of Pike*, 45 Wis. 391; 1 Am. Prob. Rep. 332, and cases cited on page 336; Schouler on Executors and Administrators, 44, note 7, 56; *Thayer* v. *Homer*, 11 Met. 110; 1 Williams on Executors and Administrators, 235; Williard on Executors and Administrators, 134–136.)

De Haven, J. — Mary C. Rode was named in the will of Joseph Bauquier, deceased, as executrix without bonds, and filed in the superior court of Sacramento County her petition for the probate of said will, and for the issuance to her of letters testamentary. Objections to her appointment as executrix were filed by her brothers, who were also legatees named in the will, upon the alleged ground that she in the lifetime of said Joseph Bauquier, "for the purpose of pecuniary gain, and to obtain an unjust and larger portion of the estate of said Joseph Bauquier, deceased, than she was legally or morally entitled to, and to defraud said Peter, Frank, and Joseph Bauquier of their just proportion of said estate, did, by means of intimidation, falsehood, fraud, deceit, misrepresentation, and undue influence, compel, influence, and induce her said father, the said Joseph Bauquier, deceased, to assign, set over and deliver" to her $12,543.88 in money and certain described real and personal property, and that the said petitioner claims adversely to the estate to be the owner of said property so fraudulently obtained. This is followed by the general allegation "that said Mary Rode is incompetent to act as executrix of the said last will and testament for want of integrity, as shown by the facts herein set forth, and that she is generally incompetent, by reason of the facts herein set forth, to act as such executrix."

An answer was filed to these objections, and after a trial upon the issue arising, the court made the following

and only finding: " Mary C. Rode is incompetent to execute the duties of the trust of executrix of the said last will and testament of said Joseph Bauquier, deceased, for want of integrity; and that the said Mary C. Rode is antagonistic and hostile, and asserts claims adverse to the said estate, and that she wants integrity in that regard."

The court thereupon denied her application to be appointed executrix. The petitioner moved for a new trial, which was denied, and from this latter order this appeal is taken.

1. Under section 1350 of the Code of Civil Procedure, no person is competent to serve as an executrix who is wanting in integrity. The word "integrity," as here used, means soundness of moral principle and character, as shown by a person's dealing with others, in the making and performance of contracts, in fidelity and honesty in the discharge of trusts. In short, it is used as a synonym for probity, honesty, and uprightness in business relations with others. The evidence in the record before us is not such as would justify a finding that the petitioner is lacking in integrity as thus defined, and we are not certain, from the peculiar language of the finding quoted, that the learned judge of the court below intended to say anything more than that the adverse interests of the petitioner would prevent her from fairly, justly, and properly protecting the estate, and that this is a want of integrity within the meaning of the statute. We do not think, however, that the mere fact that the appellant claims property as her own, which the other legatees insist belongs to the estate, would of itself, and without some reference to the honesty of her claim, show a want of integrity.

2. The remaining inquiry is, whether the court was justified in denying the appellant's application upon the ground that she " is antagonistic and hostile, and asserts claims adverse to the said estate of Joseph Bauquier, deceased, and to the heirs at law, and persons interested

in said estate "; or, adopting the language of counsel for respondents, " can one who claims a hostile and adverse interest in property alleged to belong to the estate be appointed administrator of such estate ?"

The answer to this will be found in the provisions of the Code of Civil Procedure relating to the appointment of executors, and declaring who shall be incompetent to act in that capacity.  These sections are as follows: —

" Sec. 1349.  The court admitting a will to probate, after the same is proved and allowed, must issue letters thereon to the persons named therein as executors who are competent to discharge the trust, who must appear and qualify, unless objection is made, as provided in section 1351.

" Sec. 1350.  No person is competent to serve as executor who, at the time the will is admitted to probate, is, — 1.  Under the age of majority; 2.  Convicted of infamous crime; 3.  Adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity."

"Sec. 1351.  Any person interested in a will may file objections, in writing, to granting letters testamentary to the persons named as executors, or any of them; and the objections must be heard and determined by the court."

The meaning of these sections is, that at the time of admitting the will to probate, the court must appoint as executor the person who is therein named as such, if he has petitioned therefor and is not incompetent, unless written objections to such appointment have been filed, in which case the objections must be heard and determined, and the objections made must be such as to show that the applicant is *incompetent* upon some one of the grounds specified in section 1350 of the Code of Civil Procedure.

Under our law, a man has the right to make such disposition of his property as he chooses, subject only to such limitations as are expressly declared by law, and

within the same limitation he has the absolute right to select the executor to carry out the provisions of his will. In other words, the executor named in a will has the right to act unless there is some express provision of law which declares that he shall not; and as a consequence, the testator may lawfully select any person for this trust who does not fall within one of the classes expressly mentioned and declared to be incompetent. And so far as our investigation has extended, this construction has been uniformly given to statutes relating to this subject. Thus Denio, C. J., in his opinion rendered in *McGregor* v. *McGregor*, 1 Keyes, 139, says: "The selection of executors is not committed to the surrogate's court. The testator is allowed to appoint such persons as he may see fit, provided they do not fall within the classes of incompetent persons mentioned in the statute." The language of Johnson, J., in the same case is equally explicit. He says: "The statute [2 R. S., sec. 1] makes it the duty of the surrogate, when any will of personal estate shall have been admitted to probate, to issue letters testamentary thereon to the persons named therein as executors, if they are by law competent to serve as such. It then provides who shall be deemed incompetent to serve as an executor. I am of the opinion that any person appointed or named as an executor in a will is to be deemed competent, unless he is declared incompetent by statute, and that it is the duty of the surrogate to grant letters to every person named as executor in a will, upon his application, who is not declared incompetent to serve by statute. He has no discretion to exercise in the matter, but must obey the requirements of the statute, which is the sole source of his power."

The court of appeals of Kentucky take the same view of this question. " It is sufficient for us to say that the law has declared who may and who may not be executors; and if Berry be a man whom the law allows to be appointed as such, it follows that upon his motion to give

bond and security, and to qualify under the will, it was the duty of the county court, if the security was sufficient, to permit him to give bond and be qualified as executor, and to give him letters testamentary. . . . . Whatever may be opinions of men as to the propriety or impropriety of a particular appointment, the very basis and foundation of the exercise of the right which society has granted to its members to appoint its own representatives after death is the special confidence reposed by the testator in the appointee. And men, it seems to us, would care but little for the high privilege of disposing of their estates to their own liking, if they are to be denied the right of selecting those who are to carry out and effectuate the benevolent purposes of their wills. It is true, some persons are incapable of being executors. The law has pointed out who they are, and society has long been satisfied with the wisdom of the rules upon this subject." (*Berry* v. *Hamilton,* 12 B. Mon. 191; 54 Am. Dec. 515.)

That the courts have no right to say that a person is *incompetent* to be appointed as an executor unless he falls within one of the class of persons expressly declared to be incompetent by statute, is further shown by the decisions in regard to administrators, where the law designates the order of priority in which different persons shall be entitled to appointment, and also declares who are incompetent to act. It is held in such cases that the order of priority named in the statute must be followed, and that no person can be declared incompetent unless he is one of a class so declared by the statute. A leading case on that point is *Coope* v. *Lowerre*, 1 Barb. Ch. 45. In that case the chancellor said: "The revised statutes provide that administration, in cases of intestacy, shall be granted to the relatives of the deceased who would be entitled to his personal estate, if they or any of them will accept the same, in the order specified in the statute. And I think the surrogate has

no discretion to exclude a person declared by the statute to be entitled to a preference, except for the causes specified in the thirty-second section of the title of the revised statutes relative to granting letters testamentary and of administration."

This case has been approved and followed in our state in the *Estate of Pacheco*, 23 Cal. 480. In that case it was said: "On the trial it was admitted that one of the applicants, Rosa Pacheco de Sibrian, cannot read, write, or speak the English language; that she cannot read or write the Spanish; that she is 69 years old, a Californian by birth, and a daughter of the intestate. It is not claimed that the other applicant, Penniman, is subject to any of the disqualifications mentioned in section 55, nor is the other applicant properly included therein. The fact of her great age, and that she cannot read or write, and that she cannot speak English, do not show any want of understanding within the statute. It is true, they may render it difficult for her to perform some of her duties properly, yet they do not render it impossible. In the case of *Coope* v. *Lowerre*, 1 Barb. Ch. 45, it was held by the court of chancery of New York, in construing a similar statute, that the surrogate had no discretion to exclude a person declared by the statute to be entitled to a preference, except for some of the causes specified in the statute. And it was held that no degree of legal or moral guilt or delinquency was sufficient to exclude a person from the administration, as the next of kin, in the cases of preference given by the statute, unless such person had been actually convicted of an infamous crime. In that case the administration was granted to a person proved to be dishonest, and against whom a large judgment had been recovered in a case of *crim. con.* . . . . We therefore hold that under the admissions and evidence in this case, the daughter, Rosa Pacheco de Sibrian, was entitled to letters of administration."

The decision in the case of *Coope* v. *Lowerre*, 1 Barb. Ch. 45, will be better understood when it is stated that in that case objection was made to the appointment of the petitioner as administrator of the estate of his father upon the ground "that he was disqualified on account of his vices and his improvidence"; and the statute of New York provided, among other cases of disqualification, conviction of an infamous crime, and improvidence, and it was with reference to that particular statute that the court in that case said: "No degree of legal or moral guilt or delinquency, therefore, is sufficient to exclude a person from the administration as the next of kin in the cases of preference given by the statute, unless such person has been actually convicted of an infamous crime."

The principle underlying that decision, and the cases which have followed it, is, that the courts have no right to add to the disqualifications prescribed by the legislature for such cases. In some of the states the courts are by law given a wide discretion in determining who are qualified to act in the capacity of executors and administrators. The decision in the case of *Stearns* v. *Fiske*, 18 Pick. 24, cited and relied on by respondent, was based upon a statute which authorized the court to deny the application of a person "evidently unsuitable" to discharge the duties of the trust, and it was held that this language vested a wide discretion in the probate judge.

We feel entirely satisfied that the words " want of integrity," found in section 1350 of the Code of Civil Procedure, do not apply to a case where there is a simple conflict of interest in regard to the estate between the executor named in a will and the other legatees. We are also satisfied that if the legislature had designed to make such a conflict of interest a cause for refusing to appoint an executor so named, such intention would have been manifested by language more apt for that purpose than is to be found in that section of the Code of Civil Procedure.

We may add that while the court is authorized to re-
fuse to appoint an executor named in a will for want of
integrity, yet, for manifest reasons, this power should
not be exercised except upon clear and convincing evi-
dence establishing such disqualifying fact.

The executor may always be removed after appoint-
ment unless he discharges the duty of his trust faith-
fully and as directed by law.

3. The order denying the appellant's motion for a
new trial in this proceeding is an appealable one.

Order reversed.

HARRISON, J., McFARLAND, J., PATERSON, J., SHARP-
STEIN, J., and GAROUTTE, J., concurred.

A petition for a rehearing having been filed, the fol-
lowing opinion was rendered thereon on the 3d of April,
1891:—

The COURT.—A rehearing is asked in this case, upon
the ground that the court in deciding that the order
denying a new trial is an appealable order disregarded
its former decisions upon the same point.

In *Estate of Wiard*, 83 Cal. 619, the court used the fol-
lowing language: " Subdivision 3 of section 963, Code of
Civil Procedure, enumerates all the cases in which an
appeal may be taken to this court from the superior court
in probate proceedings, and an order refusing to vacate
a decree of distribution and settlement of final account
is not one of them. "  In this case, after the entry of a
decree of distribution, the contestant gave notice of her
intention to move the court "to vacate and set aside the
decree of distribution, and for a new trial in the matter
of said petition for distribution. "  The motion, when
brought on for hearing, was denied, and an appeal was
taken from that order, but the record brought here did
not contain any statement of the case or bill of excep-
tions to enable this court to pass upon that portion of

the order denying the motion for a new trial, and the appeal was dismissed. In support of what is said above in dismissing the appeal, the court cited *Estate of Calahan*, 60 Cal. 232, and *Estate of Lutz*, 67 Cal. 457. In *Estate of Calahan*, an order had been made in 1875, purporting to settle the final account of the executor, and discharge him from his trust. In 1880, upon a petition therefor, the superior court made an order vacating the order made in 1875, and an appeal therefrom was dismissed by this court upon the ground that such order was not appealable. In *Estate of Lutz*, an order settling the final account of the executor and distributing the estate was made in 1881, and a petition filed in 1884 to vacate that order was denied by the superior court. An appeal from this order was dismissed by this court, upon the ground that it was not an appealable order. In each of the foregoing cases the court was simply called upon to determine whether an order vacating or refusing to vacate a decree of distribution is an appealable order, and its language must be construed in connection with the matter which it decided. Taken literally, the language of the court in each of those cases would imply that an appeal does not lie from an order made in probate proceedings granting or refusing a new trial, but as such construction is in direct conflict with the expressed language of the statute, it must be disregarded.

Prior to 1880, section 969 of the Code of Civil Procedure provided that "an appeal may be taken to the supreme court from a judgment or order of the probate court: . . . . 8. Granting or overruling a motion for a new trial."

In 1880 the leglislature, in order to adapt the provisions of the code to the constitution, which had given to the superior court the jurisdiction previously exercised by the district and probate courts, repealed section 969, and added subdivision 3 to section 963 of the Code of Civil Procedure, in which is contained the provisions of

section 969, excepting subdivision 8.   The provision in
subdivision 2 of section 963 of the Code of Civil Pro-
cedure, which authorizes an appeal to be taken to the
supreme court from a superior court, "from an order
granting or refusing a new trial," embraces all such or-
ders, whether made in probate proceedings or in civil
actions.   In all cases in which the superior court, when
sitting as a court of probate, is authorized to entertain
a motion for a new trial, an appeal will lie from its
order thereon.   Section 1714, of the Code of Civil Pro-
cedure provides: "The provisions of part 2 of this code,
relative to new trials and appeals, except in so far as
they are inconsistent with the provisions of this title,
apply to the proceedings mentioned in this title."   Sec-
tion 656 of the Code of Civil Procedure defines a new
trial to be "a re-examination of an issue of fact in the
same court after a trial and decision by a jury or court
or by referees."   And section 588 of the Code of Civil
Procedure declares the manner in which issues of fact
arise upon the pleadings.

It would be impracticable to enumerate the cases in
which a motion for a new trial is appropriate in probate
proceedings, but it may be stated generally that when-
ever the action of the court which is invoked is depend-
ent upon the existence of certain extrinsic facts which
are presented to it for determination in the form of plead-
ings, and are to be decided by it in conformity with the
preponderance of the evidence offered thereon, an issue
of fact arises which, after its decision, may be re-examined
by the court upon a motion for a new trial.   Under this
rule, a motion for a new trial was permissible in the
present case.   The respondents filed a written opposi-
tion to the appointment of the appellant as executrix,
setting forth therein certain facts, which they alleged
rendered her incompetent to receive the appointment.
To this she filed a written answer, denying the facts
which were alleged as rendering her incompetent, and

upon the issues thus presented an extended trial was had before the court, in which many witnesses were called, the weight and credibility of whose testimony the court was called upon to determine. This presented issues of fact, which the court after deciding was authorized to re-examine upon a motion for a new trial, and, as we have above stated, its order upon such motion is appealable. Appeals from orders made upon motions for new trial in probate matters were entertained by this court in *Estate of Learned,* 70 Cal. 140; *Estate of Briswalter,* 72 Cal. 107; and *Estate of Doyle,* 73 Cal. 564.

Rehearing denied.