In the Matter of the Estate of MARY PIERCY, Deceased.

[No. 29,127; decided February 27, 1904.]

Administrator—Drunkenness as a Disqualification.—The mere use of intoxicants, sometimes to excess, does not in itself disqualify one to act as administrator; the drunkenness contemplated by the statute as a disqualification is that excessive, inveterate and continued use of intoxicants to such an extent as to render the victim an unsafe agent to intrust with the care of property or the transaction of business.

Administrator—Evidence of Character.—The admissibility in evidence, on the issue of the improvidence of an applicant for letters of administration, of specific acts rather than general reputation, is discussed.

Administrator—Improvidence as a Disqualification.—The fact that a person has been pursuing the profession of baseball playing, has conducted saloons and gaming resorts, has indulged in gambling and lost heavily thereby, does not render him disqualified to act as administrator by·reason of improvidence.

Administrator—Want of Understanding as a Disqualification.—Want of understanding, as a disqualification to act as an administrator, does not import a lack of comprehension of the law of administration, but rather refers to a want of common intelligence amounting to a defect of intellect.

Administrator—Want of Understanding as a Disqualification.—Education is not essential to qualify one to act as administrator.

Administrator—Want of Integrity as a Disqualification.—The "integrity," which one must possess to be qualified to act as administrator, means soundness of moral principle and character as shown by his dealing with others in the making and performance of contracts and in fidelity and honesty in the discharge of trusts. It is used as a synonym for probity, honesty and uprightness in business relations with others.

Administrator—Want of Integrity as a Disqualification.—Isolated instances of departure from paths of rectitude, especially when remote from the time when application for letters is made, do not constitute "want of integrity," if it is not shown that the occasional acts have been repeated or become continuous and evidence character at the date of the filing of the petition or the hearing of the accusation.

Administrator—Disqualification of Applicant.—The court in probate must appoint the next of kin as administrator, unless he is shown to be disqualified by clear and convincing proof.

Applications for letters of administration—the first by Andrew J. Piercy, son; and the second by the Central Trust Company, nominee of eldest son and daughter.

H. V. Morehouse and John E. Alexander, for Andrew J. Piercy.

Jackson Hatch, of San Jose, and W. F. Williamson, for the Central Trust Company.

COFFEY, J.   Edward M. Piercy and Mrs. Jane Martel, son and daughter, respectively, of decedent, ask the appointment of the Central Trust Company as administrator of the estate of their deceased mother, and oppose the application of their only surviving brother, Andrew J. Piercy, on the grounds of incompetency under the statute, section 1369, Code of Civil Procedure, by reason of drunkenness, improvidence and want of understanding and integrity.

The precise language of the pertinent part of the statute is: No person is competent or entitled to serve as administrator or administratrix who is adjudged by the court incompetent to execute the duties of the court by reason of drunkenness, improvidence, or want of understanding or integrity.

These conditions of incompetency must exist at the time of the trial or application; or, at least, some of them must be established.

It is clear, as counsel for the trust company concedes, that in the absence of evidence satisfactory to the court of the incompetency of Andrew J. Piercy he will be entitled, upon the present proceedings, to have letters of administration issued to him; but while counsel contends that there is testimony tending to prove all the allegations, he particularly wishes to impress upon the mind of the court the force of the opposition to the appointment upon the ground of improvidence.   This is, as has been suggested in argument, as is each of the other grounds of opposition, a question of fact to be found by the court from the evidence before it; and, we are told by counsel, that the history of Andrew J. Piercy's career and his associations strongly tend to the support of the charges made against him.   Considering the accusations each in the order of the statute:

## 1. DRUNKENNESS.

That the applicant Andrew is addicted to drinking liquor and occasionally, if not frequently, indulges to excess, has been testified to by his brother and sister, and, as to one instance, by a stranger, a notary of San Jose.

This is what the counsel for the trust company calls an "array of testimony."

As against this array, four or five witnesses, two of them proprietors of saloons, and others frequenters thereof, all of them, perhaps, in the category of experts, have testified in substance, that Andrew is a moderate drinker.

Taking all this testimony as true, this question does not turn upon the fact that the applicant is in the habit of imbibing intoxicants even to a considerable extent. However reprehensible this may be regarded from a moral point of view, it is not within the province of the court to deny letters on that account alone; the mere use and occasional abuse of intoxicants is not enough in itself to deprive him of his statutory right. The drunkenness contemplated by this statute is that excessive, inveterate and continuous use of intoxicants to such an extent as to render the subject of the habit an unsafe agent to intrust with the care of property or transaction of business.

The evidence in this case does not show habitual, continued, inveterate and irremediable habits of drunkenness, incapacitating the applicant for the transaction of business. Only such habits can be held to have been intended by the legislator as a disqualification for the trust of administration on the ground of drunkenness as would warrant a magistrate in designating such a person as a common drunkard under the statute or a jury in adjudging him to be so.

In such a case as this, as between the applicant, Andrew, and a stranger, the law expressly confides the privilege of administering upon the estate of the deceased to him on condition of his giving adequate security; and this privilege is not to be forfeited without clear evidence of his incapacity: Kechele's Case, Tuck. 52. This case is reported as Elmer v. Kechele, 1 Redf. Surr. 472; Pen. Code, sec. 647.

The vital question in the investigation of this objection is whether or not the applicant for letters is, by reason of the

inveterate use of intoxicants, incompetent, and not whether
he may or may not have used the same to some extent, or
even at times indulged immoderately: Root v. Davis, 10 Mont.
245, 25 Pac. 105. This disposes of the first ground or charge
of incompetency alleged against Andrew.

## 2. IMPROVIDENCE.

This is the ground mainly relied upon by the opposition
to Andrew, and it is contended that by his own admissions on
the witness-stand he has proved the truth of his allegation.
It is claimed, as proof, that at the age of forty-nine years
he is without visible means of support; that he has not
transacted any business nor earned any money for several
years; that in fact since 1871 he has done nothing of an
honorable character by way of business, having been engaged
in no other occupation than that of keeping saloons and
gaming resorts, and professional baseball playing; he was
also partner in a poolroom and the associate of its frequent-
ers; that he spent his patrimony of many thousands in a
short space; and that his undivided interest in his inheritance,
the enjoyment of which was conditioned upon his mother's
death, was mortgaged, and that the mortgage is now in fore-
closure. Andrew's brother, Edward, testified strongly
against applicant's capacity on the score of improvidence.
Edward swore that Andrew had squandered his share of his
father's estate in gambling and dissipation; he had spent
forty thousand dollars in two years; for five years he had
been entirely supported by Edward and the decedent; that
he had collected and appropriated sums of money belonging
to Edward and their mother; and that he had admitted to
Edward that he had embezzled the funds of his brother, the
late Samuel W. Piercy.

Edward admitted on cross-examination that he was vin-
dictive toward Andrew; that he believed in revenge, and that
he wanted to retaliate on Andrew for the wrongs he had
suffered from him, and that he wanted the trust company ap-
pointed because thereby whatever estate decedent had would
be better protected. He also said that Andrew had threatened
him with all sorts of litigation if appointed administrator.
It is admitted that there is some suit in court which in-

volves some question of Edward's liability to the estate of decedent, and in the event of Andrew's appointment he will undertake to prosecute the proceedings.

Several witnesses were called in behalf of Andrew to sustain his reputation as against the charges made; but counsel for the trust company contends that it is not a question of reputation, but of character, and that upon this point no light has been shed by these witnesses. Some of them testify that they had transactions with him in business in years past and that he had proved trustworthy; but it is claimed that the effect of this testimony is so remote as not to aid the court in any manner in this matter. Character is usually established by evidence of reputation; the general rule being that character is a fact which is proved by another fact—that is, general reputation; and it cannot be shown by evidence of particular and specific facts, but may be proved by negative testimony.

It is said, however, that where character is the fact in issue, this rule is relaxed, and that evidence of acts may be introduced tending to establish the ultimate fact; but the evidence in this case was offered and received without objection, and the consideration of its admissibility in such a situation might seem more academic than practical.

In the Connors Case, 110 Cal. 408, 42 Pac. 906, cited and relied upon by the trust company, the counsel for applicant claimed that improvidence is an attribute of character that can be proved or disproved only by evidence of general reputation, and that all the testimony introduced on the issue as to specific acts was inadmissible and should be disregarded by the appellate court, but that tribunal said it did not think such contention could be sustained, although, for the reason that no exception had been saved in the trial court, the discussion became immaterial.

In the same case the supreme court said that improvidence is defined to be want of care or foresight in the management of property, and quoted from Coope v. Lowerre, 1 Barb. Ch. 45, that "the improvidence which the framers of the statute had in contemplation as a ground of exclusion is that want of care and foresight in the management of property which would be likely to render the estate and effects of the intestate

unsafe and liable to be lost or diminished in value by improvidence, in case administration thereof should be committed to such improvident person.''

Counsel for the trust company thinks that the principle of exclusion stated in the quotation, when applied to the facts of the case at bar, should bind the applicant Andrew on account of his improvidence, for, it is claimed, the court can come to no other conclusion, in view of his own career and his present condition than that he has been improvident beyond question, and that his improvidence would be likely, for that seems to be the test, to render the estate of his intestate unsafe and liable to be lost or diminished in value; and counsel insists that it is no answer to this to say that he will be compelled to give a sufficient undertaking for the execution of the trust, for the statute commits the administration only to a *provident* principal, with good sureties, and denies to it an *improvident* applicant irrespective of a bond. Nor is the smallness of the estate material; nor is the fact that the purpose of the applicant is not so much to deal with the nominal estate as to carry on litigation involving the estate in what seems to the opponent fruitless efforts to derive a benefit personal to himself.

This court has no means of judging, and no power to judge, in this proceeding of the merits of the litigation alluded to; it has no right to say whether it may be fruitless or otherwise. That question is in another forum, and is not presently, at least, a matter for the consideration of the probate department.

The evidence against Andrew is mainly that of his brother Edward, and his testimony is so tinctured by his grievances that its trustworthiness is impaired. It is an unfortunate fraternal feud of many years' duration; but the bitterness of the brothers toward each other does not of itself disqualify either for the trust. That Andrew has indulged in card-playing, or that he has been pursuing the profession of a baseball player for gain, or conducted licensed saloons or resorts where persons engaged in horse-racing or pugilism or other so-called legitimate sporting events met and made or laid wagers, and that he himself lost heavily at times by a lack of judgment or an error of calculation in such ventures, may be admitted; but

to hold that these acts make out a case of incompetency, by reason of improvidence, in the sense of the statute, would be to give the language a very loose and undiscriminating interpretation: Emerson v. Bowers, 14 N. Y. 454.

In the case last cited it is said that all the departures in conduct from the principles of rectitude, including all abuses of trust, are unwise and inexpedient, and, therefore, in a certain sense, improvident; but they do not constitute the kind of improvidence which the legislature had in view in these enactments. Edward testified that Andrew had admitted to him that he had embezzled the funds of another brother, now deceased, and that he had collected and appropriated sums of money belonging to Edward and their mother; but the court of appeals of New York has held that a person may be guilty of negligence or abuse in a fiduciary capacity, and yet not be improvident in the sense of the statute. The words in which the term is associated, "drunkenness," "want of understanding," are of some importance in arriving at its true construction. He may have misbehaved himself in a trust, but for that misbehavior the law provides a remedy; but even if that misconduct be established here, it does not constitute improvidence, according to the authority so strongly relied upon by the trust company, Coope v. Lowerre, 1 Barb. Ch. 48, in which the chancellor said that although it appeared that the applicant was grossly negligent in the management of his property and affairs and in the contracting of debts by indorsing for strangers or for men without visible means of payment, the court could not come to the conclusion that the party was improvident to such a degree as to render him incompetent to act as administrator, for no degree of moral delinquency is sufficient to exclude a person preferred by the statute.

This is stating the case in the strongest form against Andrew, for the charges made by Edward depend principally upon that brother's testimony, and are not to be accepted without reserve, and they are negatived by testimony of uninterested persons who have had dealings with Andrew of considerable dimensions in times past, and who testify to the personal probity and business providence. Whatever criticism may be cast upon their character by reason of their commercial calling, their credit may be considered as at least

equal to that of Edward, and their interest and bias are not so great, if, indeed, any such element may be assigned to them. The remarks of the chancellor in Coope v. Lowerre may be read with advantage upon this phase of the case, as made against Andrew, so far as Edward's testimony is to be taken; and these comments seem to have received the approval of our supreme court in the Bauquier matter, 88 Cal., pages 311, 312, 26 Pac. 178, 532.

### 3. Want of Understanding.

This charge is not relied upon as a ground of incompetency, and may be dismissed without further consideration as to the applicant Andrew. Ordinarily, the words do not import a lack of comprehension of the codes or the law of administration; but the phrase rather refers to a want of common intelligence amounting to a defect of intellect. Education is not essential, no matter how useful to administrator: Matter of Shilton, Tuck. 73; Estate of Pacheco, 23 Cal. 480.

### 4. Want of Integrity.

While the court is authorized to refuse to appoint as administrator for want of integrity, yet this power should not be exercised except upon clear and convincing evidence. The word "integrity," as here used, means soundness of moral principle and character, as shown by a person's dealing with others, in the making and performance of contracts, in fidelity and honesty in the discharge of trust; in short, it is used as a synonym for probity, honesty, and uprightness in business relations with others. This is the definition of the Bauquier Case, 88 Cal. 307, 26 Pac. 178, 532, and the evidence in the record before this court, apart from the assertions of Edward in his testimony, would not warrant a finding that Andrew is lacking in integrity as thus defined.

Much of what has been said under the head of improvidence may be regarded as repeated here, and need not be enlarged. Some of the acts attributed to Andrew by Edward are so remote as to come within the criticism of counsel for the trust company that the testimony does not assist the court in arriving at a conclusion as to the applicant's present status as to integrity; and they are combated by evidence already

adverted to coming from citizens with whom he has had business relations.

In a case in New Jersey, Cramer v. Sharp, 49 N. J. Eq. 558, 24 Atl. 962, an applicant was accused of misconduct in connection with the administration of his father's estate, in that he attempted through a third party to secure title to lands, of which his father died seised, at less than their fair value—in other words, as the court said, he undertook a fraudulent breach of his duty; yet he was eligible to the appointment sought by him. It is true the court in that case found extenuating circumstances, yet it is clear that the attempted act of the applicant was tainted with turpitude.

One reason for the court's ruling was that the opponent was equally guilty in a similar transaction, and was thereby estopped from assigning misconduct to the applicant, who was also the choice of the majority of the next of kin.

In this New Jersey case the court observed that the right of administration grows out of the right to distribution, and, consequently, those who are entitled, by the statute of distribution, as to what remains as the intestate's clear estate, after the payment of debts and expenses of administration, have an exclusive primary right to administer, which right, however, is purely personal, not coupled with any power or right on the part of the person possessing it to nominate or select the person to be appointed. This privilege is sometimes conferred by statute; but ordinarily the court said, it is undoubtedly true where a part of the next of kin, even a majority, ask for the appointment of a stranger against the will of one of their own number, who is willing to take the appointment and qualified to be the appointee; the rule, however, is different where the majority ask for the appointment of one of their own number.

In the case at bar two of the kin out of four ask for the appointment of a stranger, the trust company, as against Andrew, who is not opposed by a third, the daughter of a deceased brother, Samuel, whose funds he is said to have converted to his own use many years ago.

The forces here are evenly divided, as it seems.

The general rule was stated in the New Jersey case to be that if the majority of interests desire that the administra-

tion shall be placed in the hand of one of the next of kin, the court, in its discretion, will usually grant it to the nominee of such majority.

Under this view of the law, if the applicant, Andrew, being one of the next of kin of the intestate, were the choice of the majority of interests, his appointment would be entirely proper, unless his misconduct operate, as a matter of law, to totally disfranchise him; but in Cramer v. Sharp, the court said it knew of no adjudication which declared that a single breach of duty or a single act of dishonesty would produce such results.

While Andrew is not the choice of a majority of the kin, his opponent is, as to that fact, in no superior position, but occupies an inferior situation, as a stranger, and unless the evidence establishes a legal lack of integrity in the applicant, letters should issue to him.

Isolated instances of departure from the principles and paths of rectitude, especially when remote from the point of time at which the application is made, do not constitute a cause of exclusion on the ground of "want of integrity," where it is not shown, by legal proof, that the occasional acts have been repeated or become continuous, and evidence character at the date of the filing of the petition or hearing of the accusation. This seems to be the tenor and tone of the decisions.

This court is of opinion that while there may be testimony tending to support the charges against the applicant, Andrew, there is not evidence sufficient to prove their truth, and the supreme court has declared and decided that the judge in probate must appoint the next of kin unless he is shown to be disqualified by clear and convincing proof.

The application of Andrew J. Piercy is granted upon furnishing a bond in the sum of fifteen hundred dollars.