In the Matter of the Estate of JOSEPH A. TAYLOR, Deceased.

MARY TAYLOR, Petitioner and Appellant, *v.* HAZEL A. TAYLOR, as Administratrix of the Estate of Joseph A. Taylor, Deceased, Objector and Respondent.

No. 3338

July 2, 1941. 114 P.(2d) 1086.

*John Davidson* and *H. R. Cooke,* both of Reno, for Appellant.

*A. J. Maestretti* and *Harold O. Taber,* both of Reno, for Respondent.

# OPINION

By the Court, ORR, J.:

Joseph A. Taylor died intestate, leaving an estate of the value of approximately $5,000. The respondent, Hazel A. Taylor, is the divorced wife of said deceased. Shirley May Taylor, a minor daughter, was the only issue of the marriage, and by provisions of the divorce decree the custody of the child was awarded to the said Hazel A. Taylor. The said Hazel A. Taylor was appointed special administratrix of the said estate, and was also appointed guardian of the person and the estate of the said infant child. Mary Taylor, sister of the deceased and appellant herein, as did Hazel A. Taylor, petitioned the lower court to be appointed administratrix of the estate of said deceased. The respondent stated in her petition inter alia, that if she should be appointed guardian of said minor she would be entitled to letters of administration upon the estate in preference to any other person, and at the time of the hearing of her petition she had been appointed such guardian. The appellant based her right to appointment by reason of her relationship to deceased, namely, that of a sister.

The petition of respondent was heard on January 22, 1941, and on January 27, 1941, appellant's petition for letters came on regularly for hearing. On January 20, 1941, Mary Taylor filed objections to the petition of Hazel A. Taylor, on the grounds: First, that the petition of Hazel A. Taylor did not state facts sufficient to show she was one of the persons designated by law as having a prior right over objector Mary Taylor; second, that the facts stated in the said petition of Hazel A. Taylor showed that objector Mary Taylor, as the surviving sister of said deceased, had a prior and preferred right over said Hazel A. Taylor; third, that said Mary Taylor had filed her petition praying for letters; fourth, that the right of Hazel A. Taylor to

have letters issued to her was subordinate to the right of Mary Taylor, sister of the deceased.

On January 13, 1941, Hazel A. Taylor filed objections to the petition of Mary Taylor, as follows: First, that Mary Taylor was a resident of California; second, that the minor child was a resident of Washoe County; third, that the said Hazel A. Taylor had filed a petition for letters of guardianship of the person and estate of said minor; fourth, that said Hazel A. Taylor was the mother of said minor, residing in Reno, and by the terms of the divorce decree had the custody and control of said minor child; fifth, that said Hazel A. Taylor was, on January 3, 1941, appointed special administratrix of the estate of said deceased; sixth, that said Hazel A. Taylor had filed a petition for letters of administration "based upon her relationship to the minor, who is the legal heir to said deceased"; seventh, that Mary Taylor, as sister of said deceased, was "subordinate to the right of said minor" for letters of administration, as provided by the terms of the statute of this state.

The petition of Hazel A. Taylor came on for hearing first, and at the conclusion of the hearing appellant promptly moved for an order denying the petition of Hazel A. Taylor, "on the ground that it appeared from the record that the right of Hazel A. Taylor, the divorced wife of deceased, was subordinate and junior to the right of Mary Taylor." The matter was postponed until January 27, 1941. The hearing being resumed on said date, Mary Taylor testified that she was employed at San Francisco at a salary of $85 per month, and had been previously employed for nine and a half years; that she was the only living near relative of the deceased, except the minor child; that she heard of her brother's death, came to Reno and selected a funeral service priced at $1,250; that she thought the value of the estate to be somewhere in the neighborhood of $5,000, but that she expected to and intended to use as much of her own funds as would be necessary

to make up the difference between what the court would allow and the actual cost of the funeral service; however, after a conference with Hazel A. Taylor, who expressed the opinion that the service selected was too expensive, Mary Taylor selected a less expensive one, costing something over $900, $100 of which was payable by the veterans' association. Mary Taylor also testified that she knew the amount of funeral expenses chargeable against the estate was a matter which the court would pass upon and control.

■ The Nevada statute fixing the preference as to who is entitled to letters of administration is section 9637 N. C. L. Under the classifications made by the statute, Mary Taylor, sister of the deceased, was in the fifth class, and Hazel A. Taylor, his divorced wife, was in the eleventh class. It is the law that the provisions of the statute relative to the priorities of appointment are mandatory, and the court has no discretion but to appoint one preferred by statute, if otherwise competent. 23 C. J. 1033, sec. 92, note 84; In re Bauquier's Estate, 88 Calif. 302, 26 P. 178, 532; In re Nickals' Estate, 21 Nev. 462, 34 P. 250; In re Webb's Estate, 90 Colo. 470, 10 P. (2d) 947.

■ However, respondent Hazel A. Taylor asserts that she has a prior right to letters of administration over appellant, sister of deceased, because she is the guardian of the estate of Shirley May Taylor, the infant child of said deceased, the contention being that while the child is not entitled to exercise the duties of an administrator, because she is under the age of majority, even in the absence of a statute so providing her guardian should represent her. We do not agree. The respondent's status as guardian of the child confers upon her no legal right to letters. Section 9637 N. C. L. fixes the classifications and priorities. Section 57 of the act to regulate settlement of the estates of deceased persons, c. 55, approved November 29, 1861, which was in force until March 23, 1897, made provision that when persons entitled to letters were minors, letters should be issued

to the guardian of said minors. This act was expressly repealed by the Act of March 23, 1897, being section 9882 N. C. L., which said section eliminates the provision relative to the right of a guardian to be appointed. The Act of March 23, 1897, was almost entirely taken from California. The California act contained a provision as follows: "If any person entitled to administration is a minor or an incompetent person, letters must be granted to his or her guardian * * *." Such is the law of California today, and was the law when the Nevada legislature adopted practically the entire Probate Code of California. But the foregoing, section 1368 of the California Code of Civil Procedure, was omitted, and it must have been intentional, the idea being that the right of a guardian to be appointed should no longer obtain in this state.

Respondent maintains that said section 57, entitling a guardian to letters, was merely declaratory of the common law, and she calls attention to the rule that the repeal of a statute which is declaratory of the common law does not necessarily effect an abolition of the common law, the common law, so far as it is not repugnant, being the rule of decision in this state, hence the repeal of the express statute leaves the common-law rule still in effect. We conclude that, the legislature having specified the persons entitled to letters, with their priorities, and a guardian not being named in the statute, the axiom "expressio unius est exclusio alterius" applies. And, again, the Act of March 23, 1897, appears to be a revision of the whole subject of the settlement of estates of deceased persons and appointment of legal representatives, and being such a revision, any and all common law of which the statute of 1861 was declaratory was thereby repealed. See Gill v. Goldfield Consol. Mines Co., 43 Nev. 1, 176 P. 784, 184 P. 309; Thorpe v. Schooling, 7 Nev. 15; State v. Lee, 28 Nev. 380, 82 P. 229; State v. Rogers, 10 Nev. 319. See, also, 59 C. J. 922, note 57; Boston Ice Co. v. Boston, etc., R. Co., 77 N. H. 6, 86 A. 356, 45 L. R. A. (N. S.) 845, Ann. Cas.

1914A, 1090; Aetna Life Insurance Co. v. Swayze, 30 Kan. 118, 1 P. 36.

Mary Taylor being in the fifth class and Hazel A. Taylor being in the eleventh class, said Mary Taylor was clearly entitled to letters of administration unless found to be incompetent under some provision of the statute.

Section 9640 N. C. L. reads: "No person shall be entitled to letters of administration who shall be: First—Under the age of majority; or, second, who shall have been convicted of an infamous crime; or, third, who upon proof shall be adjudged by the court incompetent to execute the duties of the trust, by reason of drunkenness, improvidence or want of integrity or understanding."

The trial court based its decision in refusing to appoint Mary Taylor upon one of the disqualifications contained in the statute, namely that the said Mary Taylor was improvident. Appellant contends that the trial court was without authority to make a finding relative to the improvidence of Mary Taylor because no such disqualification was alleged in the objections filed by the contestant, Hazel A. Taylor, it being the position of appellant that a probate court is confined to the issues raised by the petition and the grounds set forth in the written objections filed; and appellant finds support for her contention in the following cases: In re Gordon's Estate, 142 Cal. 125, 75 P. 672; In re McCausland's Estate, 170 Cal. 134, 148 P. 924; In re Rollins' Estate, 189 Cal. 392, 208 P. 280; In re McClellan's Estate, 27 S. D. 109, 129 N. W. 1037, Ann. Cas. 1913C, 1029.

In considering this question we have encountered much difficulty in attempting to reconcile the principle announced in the cases, supra, with our conception of the duty of a probate court relative to the appointment of administrators. We have been unable to find a satisfactory answer to the question of how the court can

follow the injunction of the statute to appoint a competent person if it be confined to the allegations contained in written objections, should those allegations fail to point out a disqualification which clearly appears in the evidence. We think the better reasoning to be that a court has discretion to act and refuse to appoint one otherwise preferred by statute if a statutory disqualification is clearly made to appear by competent and substantial proof, and that the same strict rule that the findings of the court must be within the issues formed cannot be applied in probate proceedings as they must be in the ordinary civil proceedings. An extreme case serves to illustrate the point we are endeavoring to make. Suppose issues have been formed relative to disqualification on the ground of drunkenness and want of integrity, and upon the hearing these charges are not sustained, but it is made to clearly appear from evidence introduced that the party was unable to execute the duties of the trust by reason of a want of understanding because of some form of insanity. Could it be said that the court is bound to appoint an insane person merely because the issue had not been presented in the objections filed? The answer is obvious. In Re Morgan's Estate, 209 Mich. 65, 176 N. W. 606, at page 609, it is said: "That some discretion rests in the probate court there can be no doubt. If a fair issue of fact is raised by the evidence of those denying the widow's competency because of unsound mind, lack of normal understanding or average intelligence [etc.], the discretion of the probate court can readily be conceded."

The case of In re Nickals' Estate, 21 Nev. 462, 34 P. 250, is cited in support of the proposition that incompetency must be alleged and proved. In that case the court uses the words "neither allegation nor proof." What the opinion of the court would have been had there been proof of incompetency remains open for speculation.

The argument made that only disqualifications set

out in the statute can be recognized, while true, is not of much importance here, because of the fact that improvidence, the disqualification acted on by the lower court, is contained in our statute.

We conclude. that if a statutory disqualification is made to appear by substantial evidence, a court has a right to use its discretion and act thereon and refuse to appoint a disqualified person, even though such disqualification may not be alleged in the. written objections, believing such a holding to be necessary in order to permit a court to properly safeguard an estate and to withhold administration thereof from the hands of incompetent persons.

 The trial court refused to grant letters of administration to petitioner Mary Taylor because said court found her to be improvident, basing such finding upon the fact that she had ordered the $1,250 funeral in the first instance, later reducing it to something over $900, when the estate was of a value of around $5,000. We may admit at the outset that to order a $1,250 funeral, or even a $900 funeral, to be paid for out of an estate of that value, would be evidence of a person having little concern for the proprieties of the situation. But in this case, in making the finding, we do not think the propriety of the action of Mary Taylor can be made to rest alone upon the value of the estate, for to do so is to disregard some very important evidence given by her and which stands uncontradicted. We think the proper method of evaluating her action is to not only take into consideration the value of the estate, but, further, the fact that she knew that the final decision as to the amount that would be paid out of the estate towards funeral expenses rested with the court; that in ordering a funeral service with such thought in mind she obligated the estate to the extent only as was reasonable, taking into consideration its value and the future of the minor child, this because such considerations would doubtless enter into the trial court's determination of the amount that would be

allowed. In determining whether or not she acted improvidently in ordering the expensive funeral service, the court was bound to consider the fact that she could not bind the estate for an excessive amount, and that in the payment of that expense not only the value of the estate but the extent of her personal resources were to be considered. There is nothing in the evidence to dispute the fact that she was amply able financially to take care of any excess over and above the amount allowed by the court. The extent of her assets does not appear. They must be considered here to have been ample, no contradiction appearing. So it appears that the finding that she was improvident by reason of the fact that she ordered the expensive funeral service was not based upon all of the evidence appearing in the case, but merely on the evidence as it related to the value of the estate. Mary Taylor testified that her future was assured. She had been employed for many years. It is reasonable to conclude from her testimony that out of a rather meager salary she had been able to build up somewhat of a competence. If she has been able to accomplish this, then she must have some conception of the value of money, and through the years has not been accustomed to squander her funds or live beyond her station in life. Such circumstances clearly do not demonstrate such a habit of mind as would unfit her for the trust of administratrix of this estate. Each case must rest upon its particular facts, and the evidence of incompetency must be clear to defeat the right to letters. Estate of Bauquier, 88 Cal. 302, 26 P. 178, 532. The evidence here of purchasing a funeral service to be paid for by the estate and out of the personal funds of Mary Taylor does not show a habit of mind or such general conduct as to bring the case within the definition of improvidence as the term is used in our statute. See In re Flood's Will, 236 N. Y. 408, 140 N. E. 936; Nichols v. Smith, 186 Ala. 587, 65 So. 30; In re Brinckmann's Estate, 89 Misc. 41, 152 N. Y. S. 542; Emerson v. Bowers, 14 N. Y. 449; In re Connors'

Estate, 110 Cal. 408, 42 P. 906; Matter of Greene's Estate, 48 Misc. 31, 96 N. Y. S. 98; Matter of Manley's Estate 12 Misc. 472, 34 N. Y. S. 258; 31 C. J. 353.

The order of the trial court appointing Hazel A. Taylor administratrix is reversed, and the case remanded, with instructions to the lower court to grant the petition of Mary Taylor.