ALICE CLARK et al.

v.

CAROLINE PATTERSON.

*Opinion filed February 21, 1905—Rehearing denied April 5, 1905.*

1. EXECUTORS AND ADMINISTRATORS—*requirement that the court shall issue letters testamentary to executor named in will is mandatory.* The requirement of section 1 of the Administration act that after a will is duly probated the court "shall issue letters testamentary thereon to the executor named in the will, if he is legally competent and accepts the trust and gives bond to discharge the same," etc., is mandatory.

2. SAME—*words "otherwise disqualified," used in section 5 of Administration act, construed.* The words "otherwise disqualified" and "not disqualified," used in section 5 of the Administration act, providing that when one of the two or more executors named in the will dies or refuses to act or is "otherwise disqualified," letters shall be granted to the other person or persons named "not disqualified," mean *not legally competent* to act under the statute, and do not confer upon the court power to impose qualifications not required by the statute.

3. SAME—*what not ground for refusing letters testamentary.* Letters testamentary to the person named in the will as executrix cannot be refused upon the ground that she has for many years held intimate business relations with the decedent, acting as his secretary and business manager, has had illicit sexual relations with him, and has received property, both real and personal, from the decedent during the continuance of both relations.

4. SAME—*appointment cannot be refused because grounds for revocation may arise.* Letters testamentary to the executrix named in the will cannot be refused upon the ground that objections are filed by the heirs alleging there are reasons warranting the belief that the executrix will so conduct herself that grounds for revocation of the letters will arise in the future.

5. SAME—*adverse interest or want of harmony with co-executors is not ground for refusing appointment.* An adverse interest as creditor of the decedent or want of harmony with the persons named as co-executors is not a ground for refusing letters testamentary to the person named in the will as executrix; nor can such refusal be based upon the alleged ground that she has received property from the decedent which the heirs will seek to recover for the estate.

6. SAME—*power to revoke letters testamentary is not unrestricted.* It is only when one or more of the statutory causes for revocation are properly brought before the court for judicial action thereon that the court has jurisdiction to revoke letters of administration or letters testamentary.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

DUPEE, JUDAH, WILLARD & WOLF, for appellants:

Where, as in Illinois, a statute covers the whole subject of the administration of estates, it is not material what the causes were which at common law justified a refusal to appoint an executor. *Ikelheimer* v. *Chapman's Admrs.* 32 Ala. 676; *Berry* v. *Hamilton,* 12 B. Mon. 191.

By section 5 of the "Act in regard to the administration of estates," which section alone applies where two or more executors are, as in this case, nominated in a will, the court is permitted and commanded to refuse letters testamentary to any one of the applicants who is, in its sound judgment, not qualified. *Peyton's Appeal,* 12 Kan. 398; *Corrigan* v. *Jones,* 14 Colo. 311; *O'Rear* v. *Crum,* 135 Ill. 294; Jones & Cunningham's Probate Practice, (ed. of 1892) 12.

The enumeration contained in section 3 of the Administration act does not define, or purport to define, who the persons are whom the court is directed by section 5 not to appoint if disqualified. Black's Law Dic. 370; *Meeks* v. *Vassault,* 3 Sawyer, 206; *Carr* v. *Wilson,* 32 W. Va. 419; *Bauman* v. *Grubbs,* 26 Ind. 219; *Thayer* v. *Homer,* 11 Metc. 104; *In re Blinn,* 99 Cal. 216; *Appeal of Smith,* 61 Conn. 420; *Farmers' Trust Co.* v. *Smith,* 51 Atl. Rep. 609; *McGregor* v. *McGregor,* 3 Abb. App. 92.

A construction which limits, restricts and defines the term "disqualified," twice used in section 5, to include nothing but the disabilities previously enumerated in section 3, violates

the rule of construction laid down by statute, that the court shall liberally construe all general expressions used by the legislature. Rev. Stat. chap. 131, sec. 1; *Harrison* v. *People,* 92 Ill. App. 643.

Appellee should not be appointed executrix, because the objections allege, and the demurrer admits, the existence, for many years, of illicit relations between appellee and testator. *In re Plaisance,* Myr. Prob. 117; *In re Diller's Application,* 6 Ohio Dec. 182; *Wickwire's Appeal,* 30 Conn. 86; Schouler on Executors and Administrators, sec. 33; *Berry* v. *Hamilton,* 12 B. Mon. 191; *Appeal of Smith,* 61 Conn. 420.

Appellee should not be appointed executrix, because her interests are adverse to those of the estate which she seeks to administer. *Heward* v. *Slagle,* 52 Ill. 336; *Pickering* v. *Pendexter,* 46 N. H. 69; *Marks* v. *Coates,* 37 Ore. 609; *Kellberg's Appeal,* 86 Pa. St. 129; *Oliver* v. *Frisbie,* 3 Dem. 22; *Winship* v. *Bass,* 12 Mass. 199; *Hassinger's Appeal,* 10 Pa. St. 454; *Spencer's Estate,* 7 Pa. Dist. Ct. 216; *In re Estate of Mills,* 22 Ore. 210; *Moody* v. *Moody,* 29 Ga. 519.

A court must refuse to appoint an executor towards whom the beneficiaries under the will entertain a feeling of hostility for any reasons which cannot properly be termed capricious. *Estate of Pike,* 45 Wis. 391; *Drew's Appeal,* 58 N. H. 319; *Matter of Cady,* 36 Hun, 122; *Bridgeman* v. *Bridgeman,* 3 S. E. Rep. 580; *Carpenter* v. *Wood,* 91 N. W. Rep. 162; *In re Schmidt's Estate,* 38 Atl. Rep. 464; *Dulaney* v. *Smith,* 33 S. E. Rep. 533.

WILLIS SMITH, and HENRY L. WALLACE, (JOHN W. SMITH, of counsel,) for appellee:

The court must issue letters testamentary to the person nominated in the will as executor unless that person is disqualified for some of the causes pointed out by the statute. It has no discretion except in determining whether or not those statutory causes exist. *Wardwell* v. *McDowell,* 31 Ill. 364; *Saxe* v. *Saxe,* 97 N. W. Rep. 187; *McGregor* v. *Mc-*

*Gregor,* 3 Abb. App. 92; *Berry* v. *Hamilton,* 12 B. Mon. 191; *Smith's Appeal,* 61 Conn. 420; *Hartnett* v. *Wandell,* 60 N. Y. 346; *In re Banquier,* 88 Cal. 302; *Holladay* v. *Holladay,* 16 Ore. 147; *Kidd* v. *Bates,* 120 Ala. 79; *Farmers' Trust Co.* v. *Smith,* 51 Atl. Rep. 609; *Holbrook* v. *Head,* 6 S. W. Rep. 592; *Worthington* v. *Worthington,* 35 id. 113.

The court, in this State, has no discretion as to fitness or suitableness. The issuing of letters testamentary is mandatory. *O'Rear* v. *Crum,* 135 Ill. 294.

The alleged immoral relations are not a test of the competency or qualifications of an executor in Illinois; nor is the alleged adverse interest of appellee in the estate of testator ground for refusing letters testamentary. Woerner on Am. Law of Administration, 503 *et seq.; Kidd* v. *Bates,* 120 Ala. 79; Schouler on Executors, secs. 32, 33; 1 Williams on Executors, (7th Am. ed.) 269; 3 Redfield on Wills, chap. 2, sec. 3; *Stuart's Appeal,* 56 Me. 300; *Smith's Appeal,* 61 Conn. 420; *In re Banquier,* 88 Cal. 302.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the fifth day of February, 1902, one Jonathan Clark, of Chicago, departed this life, the owner of real and personal estate of the value of $600,000. He left a will, which, together with the codicil thereto, was admitted to probate in the probate court of Cook county. By the will the deceased nominated and appointed Edwin F. Bailey, George T. Clark and the appellee, Caroline Patterson, executors thereof, and directed that bond should not be required of either of them. On the third day of March, 1902, the three executors named in the will joined in a petition to the probate court asking for letters testamentary. On the hearing of the petition for the issuance of letters, said Bailey and said George T. Clark were duly appointed and qualified as executors, but the appellants, being the widow and two of the five children of the testator, filed objections to the issuance of letters to the said Caroline Patterson, appellee. The objections were overruled and let-

ters ordered to issue to the appellee upon her presenting her separate bond as executrix, in the sum of $1,200,000, conditioned as the statutes required and with sureties to be approved by the court. The court ordered that the other executors be permitted to qualify by giving their separate individual bonds in the same amount. From said order permitting the appellee to so qualify the appellants prosecuted an appeal to the circuit court of Cook county. Substantially the same objections presented to the probate court were re-filed in the circuit court. The appellee moved the court to overrule the objections on the ground that, even if true, they were not sufficient, in law, to authorize the court to reject an executrix named by the testator. The court overruled the objections and approved and confirmed the order of the probate court directing letters testamentary to issue to the appellee, and ordered the objectors (appellants) to pay the costs in the circuit court. An appeal was perfected to the Appellate Court for the First District, where judgment was entered affirming the order of the circuit court. This is an appeal from such judgment of affirmance.

The only question presented in this appeal is, were the objections of the appellants properly overruled? The objections were as follows:

"*First*—That said Caroline Patterson is not a fit, competent, qualified or proper person to serve as executrix in said estate or to whom letters testamentary or otherwise should issue therein.

"*Second*—That said Caroline Patterson has for a great many years last past held illicit sexual relations with said decedent, and has influenced his life so as to alienate his affection from his family.

"*Third*—That said Caroline Patterson has for a great many years last past held intimate business relations with said decedent, acting as his secretary and business manager, and has, by reason of such relations, received property, both real and personal, from him while said illicit relations have

continued, and that the necessity exists that the executors of said estate and the heirs of said deceased contest with said Caroline Patterson the title and possession of such property; that by reason thereof she should not assume the trust imposed upon her in said will, as an executrix; that divers other good and sufficient reasons exist which these objectors will set forth and prove upon a hearing hereof, wherefore objectors object to the selection or appointment of said Caroline Patterson as executrix herein, and to the issuance of letters herein to said Caroline Patterson, or her selection and appointment in any capacity in connection with said estate.

"*Fourth*—That said Caroline Patterson, for many years preceding the death of said decedent, sustained illicit sexual relations with him, and which relationship amounted to an open state of adultery and fornication; that in the lifetime of said decedent said illicit relationship came to the knowledge of certain of the beneficiaries under said alleged will, (including these objectors,) and by reason thereof a feeling of hostility, antipathy, aversion and distrust arose, has existed and now exists between said Caroline Patterson and each and all of the members of the family of said decedent; that the granting of the application of said Caroline Patterson to qualify as executrix would outrage the feelings of the family of said decedent, would work serious disadvantage, inconvenience and great discomfort to the beneficiaries under the alleged will, would hinder and prevent the proper administration of said estate, would cause great and needless expense and loss, and would be contrary to the best interests of said estate and its beneficiaries; that one of said beneficiaries, George T. Clark, was nominated a co-executor thereunder; that the knowledge of the former relationship that existed, as aforesaid, between said Caroline Patterson and decedent prevents said George T. Clark, so nominated as executor, from working in harmony with said Caroline Patterson, and from having confidence in her morality, integrity and judgment as executrix."

The probate court proceeded correctly in granting letters of executorship to the appellee. Section 1 of chapter 3 of the statute on administration (1 Starr & Cur. Stat. 1896, p. 269,) provides: "That when a will has been duly proved and allowed the county court shall issue letters testamentary thereon to the executor named in such will, if he is legally competent and accepts the trust, and gives bonds to discharge the same," etc. The word "shall" is used in this statute in an imperative sense. In common and ordinary meaning the word has always a compulsory sense, though at times, upon sufficient reason, it may be construed as having only a permissive or directory meaning. Where the word is employed with reference to any right or benefit to anyone, and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning, merely. (*Wheeler* v. *City of Chicago,* 24 Ill. 105; *Fowler* v. *Pirkins,* 77 id. 271; *O'Rear* v. *Crum,* 135 id. 294.) In the case last cited the meaning to be given the word "shall," as used in section 18 of the Administration act, was determined. That section provides that "administration shall be granted upon the goods and chattels of decedent to the surviving husband or wife or to the next of kin to the intestate," etc., and we held that the word "shall" related to the statutory right of a husband to administer upon the estate of his wife, and must be given an imperative construction. The same principle controls the interpretation to be given the word "shall" as used in section 1 of the same act with reference to the appointment of the person named in a will as the executor thereof. Said section 1, however, requires that the person so named to be executor shall be "legally competent" to accept and discharge the duties of the trust, and it therefore becomes important to determine whether the matters alleged in the objections established that the appellee was not legally competent to act as executrix.

Section 3 of the Administration act, adopted April 1, 1872, (1 Starr & Cur. Stat. 1896, p. 270,) and section 18 of

the same act, as amended by an act approved June 3, 1897, (4 Starr & Cur. Stat. p. 33,) are the only statutory provisions relative to the competency of persons to serve as executors. Said section 3 is as follows: "Persons of the age of seventeen years, of sound mind and memory, may be appointed executors; but when a person appointed executor is, at the time of proving the will, under the age of twenty-one years, or of unsound mind, or convicted of any crime rendering him infamous, administration with the will annexed may be granted during his minority or other disability, unless there is another executor who accepts the trust, in which case the estate shall be administered by such other executor until the minor arrives at full age or the other disability is removed, when, upon giving bond as in other cases, he may be admitted as joint executor with the former. When a married woman is executrix, her husband may give bond with her for her faithful performance of the trust as in other cases." Section 18 declares a non-resident shall not be appointed as executor.

It is not contended that the objections preferred to the appointment of the appellee as executrix are such as to render her incompetent under either of said sections 3 or 18. Appellants contend that section 5 of the Administration act authorizes the court to refuse letters testamentary to any one who, in the sound judgment of the court, is "not qualified." Section 5 is as follows: "Where two or more executors are appointed in and by the same will, and one or more of them dies, refuses to take upon himself the executorship, or is otherwise disqualified, letters testamentary shall be granted thereon to the other person or persons so named, not renouncing as aforesaid, and not disqualified."

The purpose of that section is to direct the course to be pursued by the court when a testator has appointed two or more persons as executors and one or more of them have died or have refused to accept or are not legally competent to receive the appointment. The ancient rule of the common

law was, that if one named with others as executor had died or refused to qualify or accept, the others could not execute the will. The rule was modified by the statute of 21 Henry VIII, chapter 4; but this statute related only to cases where one or more of those nominated refused to accept. (*Wardwell* v. *McDowell,* 31 Ill. 364; *Clinefelter* v. *Ayres,* 16 id. 329.) Section 5 of our Administration act was designed to establish the rule in Illinois in all cases in which all who were nominated executors could not or would not serve. The purpose of the section was to carry into effect, as far as possible, the wishes of the testator as to the person or persons to whom the control and management of his property should be committed, and not to create additional grounds or reasons for refusing to appoint the persons nominated by the testator as executors of his estate. Section 5 was not intended to, and does not, confer power on the court to prescribe additional grounds of competency or incompetency in granting letters testamentary. The words "otherwise disqualified" and "not qualified," employed therein, plainly mean not otherwise legally incompetent or not legally competent under the statute. The objections to the granting of the letters of executorship to the appellee do not impute to her any statutory disqualification. If the person nominated by a testator as executor of his last will be "legally competent," the court cannot, on objections filed, cause an issue to be formed and enter upon an investigation of alleged moral delinquencies of such person, and refuse to grant letters to a person whom the testator has chosen to manage his property and execute his will, on the ground such person has been guilty of sexual immorality.

*In re Plaisance,* Myrick's Pro. (Cal.) 117, counsel for appellants contend supports their contention. It seems to have been decided in an inferior probate court in California. In that State the statute expressly declared that no person should be deemed competent to serve as executor who should be "adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence or want

of understanding or integrity." The holding was, that "the gross immoral associations surrounding the applicant, and the admission by him that he has 'lived by his wits' for that period, are grounds for refusing him letters. His mode of life is evidence that he would be incompetent to faithfully discharge the duties of the trust, and the gross immorality as shown by his mode of life is evidence, in itself, of great lack of integrity." ·

Counsel for appellee insist that this decision has been, in principle, overruled in *In re Banquier*, 88 Cal. 302, decided by the Supreme Court of that State. But it is sufficient to say that the decision in *In re Plaisance* was based solely upon the peculiar provisions of the statute of that State, and for that reason has here neither weight as authority nor persuasive force in principle. The same may be said as to *In re Diller's Application*, 6 Ohio Dec. 182, the decision being controlled by a special provision of the statute of the State of Ohio authorizing the court to refuse to appoint as administrator a person who is "evidently unsuitable." In appointing administrators, whether an applicant is "suitable" must be determined by the court. The testator in a will enjoys the right to determine who is most "suitable" to settle his affairs and execute his will, the only restriction on such right being that the person selected shall be "legally competent." In *In re Banquier, supra,* the Supreme Court of California declared the correct general rule, as follows : "Under our law a man has the right to make such disposition of his property as he chooses, subject only to such limitations as are expressly declared by law; and within the same limitation he has the absolute right to select the executor to carry out the provisions of his will. In other words, the executor named in a will has the right to act unless there is some express provision of law which declares that he shall not, and as a consequence the testator may lawfully select any person for this trust who does not fall within one of the classes expressly mentioned and declared to be incompetent. And so far as our investi-

gation has extended, this construction has been uniformly given to statutes relating to this subject." In 11 American and English Encyclopedia of Law (2d ed. p. 751,) it is said: "All persons capable of making wills, and others besides, are capable of being executors, except such as are expressly forbidden by law."

The objection that the appellee "has for a great many years last past held intimate business relations with decedent, acting as his secretary and business manager, and has, by reason of such relations, received property, both real and personal, from decedent while said illicit relations have continued, and that the necessity exists that the executors of said estate and the heirs contest with appellee the title and possession of such property," did not render the appellee legally incompetent to receive letters testamentary. It will be observed that it is only by way of inference (if at all) that it appears from the objections that the appellee improperly or without legal consideration received any property from the testator. Even if the fact that the co-executors and heirs of an estate had or claimed grounds of action against another co-executor to recover property as legally belonging to the deceased, constituted a statutory ground for refusing to issue letters testamentary to such co-executor, the objection as here made would be too indefinite and uncertain to justify the refusal of letters. But the statute does not create such alleged adverse interest as a cause of disqualification. The General Assembly has enumerated in the statute the causes which operate to render one named as executor incompetent, and did not include an adverse interest as creditor of the testator, or want of harmony between such person and the heirs, or the like, in the grounds of disqualification. On the contrary, the right of a testator to appoint his debtor executor of his will, (which, so far as we know, has never been denied,) is expressly recognized in section 19 of our Statute of Wills. That section provides that the appointment of a debtor of the intestate as executor of the will shall not oper-

ate to release or extinguish the debt due from the executor
to the testator, etc. Alleged indebtedness of an executor to
the estate, even when the executor denies liability, thus mak-
ing his interest directly antagonistic, does not create legal
incompetency to serve as executor. *Kidd* v. *Bates,* 23 So.
Rep. (Ala.) 735.

Counsel for appellants urge that inability of one who has
been appointed as executor, to co-operate with his co-execu-
tors in the discharge of the affairs of the estate because of
want of harmony between them, or because the beneficiaries
under the will entertain a feeling of hostility against such
executor, based upon substantial grounds, would authorize
the court to revoke the letters of executorship, and that upon
sound legal principles the court should not be required to ap-
point one as executor whom it would be the immediate duty
of the court to remove. The legislature has not deemed it
wise to confer on the courts unrestricted power to revoke let-
ters of executorship, but has expressly declared the grounds
on which such revocation may be ordered. It is only when
one or more of such statutory causes are properly brought
before the court for judicial action thereon that the courts
have jurisdiction to revoke letters of administration or letters
testamentary. (*Munroe* v. *People,* 102 Ill. 406.) The statu-
tory grounds for revocation of letters testamentary are, that
the will has been set aside by "due course of law," (sec. 29) ;
that the executor has "become insane, lunatic or of unsound
mind, habitual drunkards, are convicted of infamous crimes,
waste or mismanage the estate, or who conduct themselves
in such manner as to endanger their co-executors, co-admin-
istrators or securities," (sec. 30,) and the effect of removal
from the State is set forth in sections 31 and 32. Some one
or more of the causes enumerated in section 30 must, of
course, be relied on as grounds for revocation as applied to
this case. But it is not pointed out, nor are we able to dis-
cover, that the matters alleged in the objections filed by the
appellants to the appointment of appellee as executrix state

any statutory causes authorizing her removal, and which, if this argument of counsel be conceded, would empower the court to refuse to issue letters testamentary to her. It is, moreover, proper we should say that section 30 operates only to authorize the revocation of letters for disabilities of the executor occurring or discovered after his appointment, and that a court, when asked to appoint the person whom a testator has chosen to be his executor, cannot refuse to make the appointment on the ground it is alleged there are reasons warranting the belief that the executor will subsequently incur the disabilities specified, or will so conduct himself or herself as that grounds of revocation will arise and exist in the future.

The judgment is affirmed.            *Judgment affirmed.*