In re Estate of John Lussem, Deceased.
Henry J. Lussem et al., Heirs, etc., of John Lussem, Deceased, Appellees, v. Edward N. Mohrdieck, Executor of the Estate of John Lussem, Deceased, Appellant.

Gen. No. 38,795.

Opinion filed May 11, 1936. Rehearing denied May 25, 1936.

P. B. FLANAGAN, of Chicago, for appellant.

EDWARD H. MORRIS, JOHN J. COBURN, GEORGE N. KOTIN and J. M. CAMELON, all of Chicago, for appellees.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by Edward N. Mohrdieck from an order of the circuit court revoking his appointment as executor under the last will and testament of John Lussem, deceased.

In September, 1924, John Lussem executed his will and appointed his wife, Minnie Lussem, and Edward N. Mohrdieck, his nephew by marriage, co-executors.

Lussem died January 14, 1933, and letters testamentary were issued to the named executors. Lussem left a considerable estate consisting of mortgage bonds and real estate; the total value was estimated at from $800,000 to $1,000,000; he had been married twice, with no issue by either marriage. Before his second marriage he and his intended wife executed an antenuptial agreement which provided that in the event of his death before that of his wife she would take only a certain part of his estate. Harry H. Felgar, an attorney at law at this Bar, was the attorney for Lussem before his death and continued to act as attorney for the estate. Shortly after letters were issued a dispute arose between the executors, Mohrdieck claiming that his co-executor, Mrs. Lussem, had secreted some of the assets of the estate; she claimed that the antenuptial agreement had been canceled during the last sickness of her husband and claimed the bonds and mortgages she had taken as a gift from her husband *causa mortis.* There was considerable controversy between the executor, heirs and legatees on the one side and the widow on the other. At a hearing in the probate court the judge held that the antenuptial agreement had been canceled, but because of certain testimony removed the widow, Minnie Lussem, as co-executor; an administrator *de bonis non* with the will annexed was appointed who served only a short time, thus leaving Mohrdieck sole executor of the estate.

October 4, 1934, a contract of agreement was signed by all the heirs and the widow, Minnie Lussem; by this all the parties agreed to settle all their controversies upon the terms set forth in the agreement; Mohrdieck, the executor, also signed this agreement, agreeing to carry into effect its terms and execute the documents necessary to carry out the terms of the agreement.

In October, 1935, a petition was filed in the probate court seeking the removal of Mohrdieck as executor.

The burden of the petition was that Felgar had filed a claim against the estate for attorney's fees totaling approximately $62,000; that the executor had said such a claim ought not to be allowed; that under the terms of the contract settling the controversies between the parties it was agreed that Mohrdieck should receive $5,000 in addition to moneys previously paid to him, in full of his services, including his services in closing the estate, but that after having received this sum the executor demanded additional money, threatening that unless he received it he would not co-operate with the widow and heirs in defending the fraudulent claim of Felgar but would, on the contrary, assist Felgar in his attempt to support his claims. The petitioners alleged that they feared that if the executor were permitted to go through with his program he would abet Felgar in the prosecution of his claims because of the refusal of petitioners to pay any of the unlawful demands of the executor.

To this petition Mohrdieck filed an answer, denying specifically that he had ever done anything toward delaying a settlement, denying that he had ever discussed the claim of Felgar with any of the heirs or legatees, denying that he ever claimed he was entitled to more compensation, denying he had ever stated to anyone that he would refuse to co-operate in the settlement of the estate unless he received more compensation, denied he ever told anyone that he would assist Felgar in his claim against the estate; the answer asserted that during all the litigation he had endeavored to discharge honestly and fearlessly his duties as executor, but had been hampered and harassed in the management of the estate owing to the great number of lawyers employed.

The record shows that upon the petition and the answer, without hearing any evidence, the probate judge found that Mohrdieck "has acted with gross incompetency while acting as executor of the above estate

and that the conduct of the said executor in connection with his dealings with a certain claim filed by one Harry H. Felgar is not in the interests of the estate and is not in keeping with the duties owed by the said executor to this estate.'' It was ordered that Mohrdieck be removed as executor.

An appeal from that order was taken to the circuit court where, after the hearing of evidence, the circuit court found that Mohrdieck had been incompetent and negligent as executor and had acted so as to endanger the securities and the rights of the petitioners, and it was ordered that he be removed as such executor. An appeal from that order was taken to this court.

Par. 31, ch. 3, Administration of Estates, Ill. State Bar Stats. 1935, states the ground which gives the court jurisdiction to revoke letters testamentary. This statute reads:

''The county court may revoke all letters, testamentary or of administration, granted to persons who become insane, lunatic or of unsound mind, habitual drunkards, are convicted of infamous crimes, waste or mismanage the estate, or who conduct themselves in such manner as to endanger their co-executors, co-administrators or securities, in all which cases the court shall summon the person charged to be in default or disqualified, as aforesaid, to show cause why such revocation should not be made. When revocation is made, the reason therefor shall be stated at large upon the record.''

In *Munroe v. People*, 102 Ill. 406–410, the court held that only the existence of any of these causes confers power upon the county court to remove an administrator, saying, ''Until some one of the causes mentioned in the statute is placed before the court for action, the court has no power to act at all in this regard,—has no jurisdiction to act.'' In that case the petition seeking the removal of the administratrix alleged that she had failed to pay a creditor the amount of his allowed

claim although the estate was solvent and all other allowed claims had been paid. The court held that "The statute nowhere gives jurisdiction to the county court to remove for any such cause." In *Clark v. Patterson*, 214 Ill. 533, it was urged as ground for revocation of his letters testamentary that one executor would not co-operate with his co-executors in the discharge of the affairs of the estate because of hostility or lack of harmony between them based upon substantial ground. The court held that the legislature had not conferred on the courts unrestricted power to revoke letters of executorship; that it was only when one or more of the causes mentioned in the statute are properly brought before the court for judicial action that the court has jurisdiction to revoke letters of administration.

We have examined the evidence heard in the circuit court to ascertain whether the court was justified in concluding that there was statutory ground justifying the removal of the instant executor. It seems to be conceded that the only thing remaining unsettled in the Lussem estate is the claim of attorney Felgar. It is stated that this was allowed to the amount of $12,000 in the probate court and that both Felgar and the heirs of the estate have appealed from that order to the circuit court where the appeal is still pending.

George N. Kotin, who is the attorney of record for most of the heirs, testified on the hearing in the circuit court that when he paid Mohrdieck $5,000 on account of his services as executor, Mohrdieck objected, saying in substance that unless he received more or was assured of his continuing as executor for six or seven years he would assist Felgar in his claim. Mohrdieck testified he had known the deceased for about 40 years and worked for him; he testified at some length that he had difficulties growing out of the claims of the widow; he asserts that it was through his efforts that the estate obtained over $300,000 worth of bonds; the witness denied categorically that he told Mr. Kotin that if

he did not agree to witness's terms he would keep the estate in the probate court for years; he denied ever having tried to block any settlement and never said that unless he got more money the contract of settlement would not be carried out; the witness said he had never considered what amount should be paid Felgar; that he was "going to leave that entirely to the Judge"; the witness testified that he did object to an attorney's fee for Kotin of $60,000; that this "was too much, as he came into the picture when practically the hardest fight was over." The evidence discloses that the executor was extremely zealous in attempting to gather into the possession of the estate all of the property left by Lussem, and also was objecting to the amount of fees claimed by attorneys.

The decisive question is whether the evidence showed that Mohrdieck, executor, demanded an increased allowance for his services under a threat of supporting the claim of Felgar. We are of the opinion that this charge failed of proof. It is more reasonable to accept the executor's statement that he would leave the settlement of Felgar's claim to the court, which of course he was bound to do in any event. Even if the executor had an honest opinion that Felgar had rendered services entitling him to payment of a larger amount than was allowed by the probate court this would not come within the statutory ground justifying the revocation of his letters.

The trial court, as shown by the record, was moved in part to his conclusion by the opinion in *Edwards v. Lane,* 331 Ill. 442, but that case presents decidedly different facts. There, in an estate of approximately $12,000, the husband of the executrix filed a baseless claim for $10,000; the executrix consented to the allowance of this without notice to any of the parties in interest. This was an obvious intent to loot the entire estate, and the court removed the executrix.

In the instant case, as we have said, the evidence tends to show great zeal on the part of the executor to add to the assets of the estate and anxiety over the litigation involved and the fees of the attorneys; this was commendable. There is no suggestion of mismanagement. His attitude toward the claim of Felgar is neutral. The claim of Felgar can be quickly determined and probably is by this time. As his counsel upon the trial and in this court stated, a final report can be made very shortly and the estate wound up.

There was no justification for the removal of the executor. The order of the circuit court is therefore reversed and the cause is remanded with directions to vacate the order appealed from.

*Reversed and remanded with directions.*

MATCHETT and O'CONNOR, JJ., concur.