In re Estate of Nagle.█

[Cite as In re Estate of Nagle (1974), 40 Ohio App. 2d 40.]

(No. 955—Decided March 6, 1974.)

*Messrs. Miller, Searl & Fitch* and *Messrs. Lane, Alton & Horst*, for appellant.

*Messrs. Bannon, Howland, McCurdy & Dever*, for appellees.

Gray, J. This cause is in this court on appeal from a judgment of the probate division of the Court of Common Pleas of Scioto County. Ray Nagle, deceased, executed his will, the subject of this controversy, on December 22, 1972. He died March 7, 1973. He left his property in trust for his wife and four children. He appointed Ms. Alice Williams executrix and the Security Central Bank of Portsmouth, Ohio, trustee of the estate. Ms. Williams filed the will and applied to the court to be appointed executrix of the estate. Objections to such appointment were made by the widow, Ann Agnes Nagle, and the children of the marriage of decedent and Ann Agnes Nagle.

There were two grounds advanced as reasons why Ms. Williams should not be appointed. First, in the words of counsel for Mrs. Nagle, which we quote:

"However, she was called as a witness at which time she admitted that, although she knew Mr. Nagle was married and had four children, she lived with him for over a period of twenty years and for the last five years shared an apartment with him in Portsmouth and Columbus. She admitted that decedent was 20 years older than she and that she was more than a secretary. Thus, she effectively branded herself as decedent's paramour, his mistress, his girlfriend, or other epithet which might be applied to such an illicit relationship."

Second, again in the words of counsel for Mrs. Nagle:

"She further contended that, in the waning days of his. life, Mr. Nagle entered into an agreement with her whereby he sold the assets of his business, The Modern Heating Company, to her for the sum of Thirty Thousand Dollars ($30,000.00). She admitted that there was a bill of sale and a promissory note in the amount of $30,000.00, payable in monthly installments of $500.00 each at 5% interest."

R. C. 2113.05 states:

"When a will is approved and allowed, the probate court shall issue letters testamentary thereon to the executor named in such will, if he is suitable, competent, accepts the trust, and gives bond if that is required.

"If no executor is named in a will, or if the executor named therein dies, fails to accept the trust, resigns, or is otherwise disqualified, letters of administration with the will annexed shall be granted to such suitable person or persons, named as devisees or legatees in the will, who would have been entitled to administer the estate if such decedent had died intestate, unless the will indicates an intention that such person or persons shall not be granted letters of administration. Otherwise, the court shall grant letters of administration with the will annexed to some *other* suitable person."

In *Clark* v. *Patterson*, 214 Ill. 523, 73 N. E. 806, the relevant part of the statute construed is exactly the same as ours, except that R. C. 2113.05 contains the word "suitable" and the Illinois statute did not. Furthermore, upon

reading the *Clark* case, we learn that the facts were similar.

The court, at 543, 73 N. E. 809-810, summed up the facts in that case which pertain to our first ground, as follows:

"The objection that the appellee 'has for a great many years last past held intimate business relations with decedent, acting as his secretary and business manager, and has, by reason of such relations, received property, both real and personal, from decedent while said illicit relations have continued, and that the necessity exists that the executors of said estate and the heirs contest with appellee the title and possession of such property,' did not render the appellee legally incompetent to receive letters testamentary. It will be observed that it is only by way of inference (if at all) that it appears from the objections that the appellee improperly or without legal consideration received any property from the testator. Even if the fact that the coexecutors and heirs of an estate had or claimed grounds of action against another coexecutor to recover property as legally belonging to the deceased, constituted a statutory ground for refusing to issue letters testamentary to such coexecutor, the objection as here made would be too indefinite and uncertain to justify the refusal of letters."

Additionally, the Illinois Supreme Court passed upon the second ground for removal, advanced in our case. The court, at 543, 73 N. E. 810, stated:

"But the statute does not create such alleged adverse interest as a cause of disqualification. The General Assembly has enumerated in the statute the causes which operate to render one named as executor incompetent, *and did not include an adverse interest as creditor of the testator, or want of harmony between such person and the heirs, or the like, in the grounds of disqualification.* On the contrary, the right of a testator to appoint his debtor executor of his will (which, as far as we know, has never been denied) is expressly recognized in Section 19 of our statute of Wills. That section provides that the appointment of a debtor of the intestate as executor of the will shall not operate to release or extinguish the debt due from the executor to the testator, etc. Alleged indebtedness of an exe-

cutor to the estate, even when the executor denies liability, thus making his interest directly antagonistic, does not create legal incompetency to serve as executor. *Kidd* v. *Bates,* 23 So. Rep. (Ala.) 735.'' (Emphasis added.)

Ironically, R. C. 2115.12 and the Illinois statute provide the same thing.

We are of the opinion that the trial court improperly appointed Mrs. Nagle administratrix.

The Supreme Court of Illinois, in *Clark* v. *Patterson, supra* at 539, 73 N. E. 808, construed the word ''shall,'' as used in its statute, as follows:

''The word shall is used in this statute in an imperative sense. In common and ordinary meaning the word has alway a compulsory sense, though at times, upon sufficient reason, it may be construed as having only a permissive or directory meaning. Where the word is employed with reference to any right or benefit to anyone, and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning, merely. (*Wheeler* v. *City of Chicago,* 24 Ill. 105; *Fowler* v *Pirkins,* 77 id. 271; *O'Rear* v. *Crum,* 135 id. 294.)''

We realize that there is a highly emotionally charged atmosphere surrounding this case. We are neither called upon to censure past conduct, nor to revise the history of past events. We regard the alleged sexual conduct of the testator and Ms. Williams as having very little if anything to do with the qualifications of the nominee executrix to administer the estate. It may be that the conduct of Ms. Williams is everything it is claimed to be, but that without more would not in and of itself be a disqualifying factor. She could still be a brilliant business woman very capable of administering the estate.

The testamentary nomination of a legal representative is no less, and may be more important than other testamentary provisions; in determining whether a nominated executrix is qualified for appointment, the appointing court must be guided by general principles of keeping faith with the decedent as to provisions in his testamentary disposition.

A person nominated in a will as executrix is entitled to

receive letters testamentary and the appointing court should not refuse to appoint her unless she is clearly disqualified under R. C. 2113.05.

The showing against the nominated executrix must be relatively strong in order to disqualify her, any reasonable doubt being resolved in favor of the nominated executrix. Courts and textwriters state that grounds, set forth in the statute, upon which a court may refuse letters testamen· tary to an executrix are exclusive and the court's power is limited thereby.

We are of the opinion that the probate court, upon the probate of a will, had no discretionary power to refuse to issue letters testamentary to the executrix named in such will, since the nominee is suitable and competent with regard to the term ''suitable person,'' the following has been said:

''The term 'suitable person' in statute providing that probate court shall issue letters testamentary to executor named in will if he is legally competent and a suitable person, connotes person who is considered to have capacity and will to discharge duties in particular case with fidelity and efficiency. * * *'' *Grossman* v. *Grossman*, 179 N. E. 2d 900, headnote 2.

Courts are not permitted to add grounds for disqualification to those actually specified in the statutes.

It is an inalienable right of a testator to make a will and, as long as it is not unlawful and the testator is competent, it is an abuse of discretion to alter his will. An inspection of this testator's will shows that it is long, involved and complicated.

We conceive it to be a difficult, if not an untenable, position for the beneficiaries under the will to claim that the items of the will disposing of the property of the testator are valid, but the item nominating the executrix is invalid.

Let us concede, arguendo, that the relative positions were reversed and that Mrs. Nagle was nominated executrix. Could it not be said that there would be a conflict of interest in that situation? Mr. Nagle resolved these matters when he appointed Ms. Williams executrix. No one can make a will for him or modify it,

It must be remembered that the law gives the testator the right to name his fiduciary. The law does not give his heirs and beneficiaries after his death the power to change the nominee to suit themselves.

For some reason known only to the testator, he disposed of his property the way he did. For his own reasons, he appointed Ms. Williams his executrix. For some reasons, also, the three persons in this triangle lived the way they did for a period of 20 years. From all the appearances during all these years, not one of the three attempted to change these relationships legally or otherwise. We are not here today to pass judgment upon those actions, or attempt to rectify or punish, *ex post facto*, conduct that might not square with the mores of the day. We are compelled to judge the capabilities of Ms. Williams as an executrix by far different standards, such as one's soundness of moral principle and character, as shown by that persons' dealings with others in the making and performance of contracts and in the person's fidelity and honesty in the discharge of trusts. Competency and suitability are words used as synonyms for probity, honesty and uprightness in business relations with others. The testator thought enough of his nominee that he did not require a bond for the faithful performance of her trust.

For the above reasons, the judgment of the probate division of the Court of Common Pleas of Scioto County is reversed and held for naught. This cause is hereby remanded for further proceedings according to law with directions to such court to appoint Alice L. Williams executrix of the estate of Ray Nagle, deceased.

*Judgment reversed and cause remanded*

STEPHENSON, P. J., and ABELE, J., concur.