Under such circumstances a foreign will should not be ordered to be recorded in a surrogate's office of this state, nor should an exemplified copy of such foreign will with such probate proof as above set forth have, under the authority of the above-mentioned section of the Code, superior standing to or greater effect than the original will with similar original probate proof in a county of this state. The Legislature of the state of New York never intended to give, and has not given, as I read the authorities, a foreign will such a preference. That the will has been executed in conformity with the laws of this state must be established in the manner pointed out by our law. Meiggs v. Hoagland, 68 App. Div. 182, 74 N. Y. Supp. 234; Matter of Nash, 37 Misc. Rep. 706, 76 N. Y. Supp. 453; Lockwood v. Lockwood, 51 Hun, 337, 3 N. Y. Supp. 887, 2 L. R. A. 425; Matter of Langbein, 1 Dem. Sur. 448; Estate of Shearer, 1 N. Y. Civ. Proc. R. 455.

Counsel urge in support of the application Matter of Bernsee, 141 N. Y. 389, 36 N. E. 314; but that case may be readily distinguished. In that case, it is true, but one of the subscribing witnesses testified to the essential facts, and the other denied them; but there was a full and complete attestation clause under which the contrary witness put his signature, and while on the witness stand his testimony disputed the essential facts as stated in the attestation clause, nevertheless the will was admitted to probate. For such a conflict of testimony the statute makes specific provision in section 2620 of the Code.

Counsel for the petitioner urge the great hardship which will result if the application is denied, alleging that the great lapse of time makes it impossible to cure the defects. While in applying the law such considerations should not be allowed to make weight either one way or the other, it may be suggested that in this case there is no reason for urging such a consideration. By section 2632 of the Code of Civil Procedure, as amended in 1901:

"The exemplification of the record of a will which has been proved before the surrogate or judge of probate, or other officer exercising like jurisdiction of another state, must when certified by the officer having by law, when the certificate was made, custody of the record, be admitted in evidence, as if the original will was produced and proved, when thirty years have elapsed since the will was proved."

I have disposed of the application upon the broad ground upon which it was presented; but it may not be amiss to call attention to the deposition of the subscribing witness, which fails to show that the testatrix either signed the will or acknowledged her signature in the presence of the other alleged witness.

Application denied.

---

(48 Misc. Rep. 31)

## In re GREENE'S ESTATE.

(Surrogate's Court, Cortland County. July, 1905.)

1. ADMINISTRATORS—APPOINTMENT—QUALIFICATIONS.
    Where a son had raised in business conducted in his own name and involved his father to a certain extent, and thereafter the father paid the obligations of the son, and took the business, and permitted the son to use his name, and other losses occurred, but the father allowed the business to be conducted in this way until death, no such case of improvi-

dence is shown as excludes the son from the right to administer on his father's estate under Code Civ. Proc. § 2661.

2. SAME—CONVICTION OF CRIME.

That a son has been convicted of a misdemeanor in the United States court and fined $50 is not a conviction of an infamous crime, within Code Civ. Proc. § 2661, so as to exclude him from administering on his father's estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 77.]

In the matter of the estate of Wilson Greene, deceased. Application for appointment of administrator. Granted.

Kellogg & Van Hoesen, for petitioner.

William J. Mantanye (T. H. Dowd, of counsel), for contestants.

EGGLESTON, S. Wilson Greene died intestate on or about the 30th day of April, 1905, leaving him surviving no widow and his only heirs at law, one son, G. Maurice Greene, and two daughters, Alice B. Greene and Belle G. Meacham, all of full age. The son, G. Maurice Greene, by his petition filed, asks that he be appointed administrator of the estate of his father, which appointment is objected to upon the part of the two sisters upon the ground of alleged improvidence, and also upon the ground that the petitioner has been convicted of an infamous crime in United States court, at Binghamton, N. Y.

The only witness called by the contestants to support the allegations set forth in the objection was G. Maurice Greene, and it is from the evidence given by him that it is urged that he is shown to be disqualified and precluded from being appointed administrator of the estate. The contest has been strenuous, and to a certain extent bitter, and shows a most unfortunate condition of feeling between the brother and sisters in this estate. For 10 years or more last past the son has been doing business, first in his own name and latterly in the name of his father, and during many of those years has done an extended business in the way of dealing in produce, and at times has seemed to be unfortunate in his manner of doing business. First, starting out in his own name, he made a failure and involved the father somewhat, and then the father, taking the business in his own name, paid up the obligations of the son and permitted the son to use his name in the doing of the business, and even in that respect losses have occurred which seemed to have been unfortunate to the estate of the deceased. The father, however, up to the time of his death, permitted the son to do business in this way, and the fact that he so permitted him to act as his agent, using his name almost without limitation, seems to indicate in a measure the confidence of the father in the ability of the son to carry on the same. Undoubtedly he was led to do so by a desire upon his part to help the son in business and to enable him to build up a trade that would furnish him employment and an opportunity to make money for the support of himself and family, as there is nothing showing but that the relation of the father and son was of the most friendly character. The father, dying suddenly, left to his estate considerable property connected with this business, which requires the supervision and control of some person understanding the business to administer upon the estate with a view to closing it up and saving as much as possible.

Were the discretionary power given, I would appoint as administrator of the estate some person outside of the family who has a knowledge of dealing in produce such as was handled by Mr. Greene, through his son, in his lifetime; but that discretion is not vested in the court, and the appointment must be made as provided by statute. This appointment is demanded by the petitioner under section 2660 of the Code of Civil Procedure, wherein it is provided, "if several persons of the same degree of kindred to the intestate are entitled to administration they must be preferred in the following order: First, men to women," etc., and the son claims this is as an absolute right to himself as against his sisters. This right so given to the son cannot be taken from him, unless, as provided in section 2661 of the Code of Civil Procedure, he has been convicted of an infamous crime or unless he shall be adjudged by this court incompetent to execute the duties of such trust by reason of drunkeness, improvidence, or want of understanding. Thus it will be seen that the right asked for by the petitioner is statutory, and one of which he cannot be deprived unless he is brought within the restrictions in section 2661.

This statutory provision is a declaration and affirmation of the right which the common law gave to a son, and the withholding of letters of administration from such son who is entitled to priority under the statute, unless by some cause incapacitated, is never justified except in cases where disqualification is declared by the statute itself. Mr. Redfield, in his work upon the Practice of Surrogate's Court, states:

"That the rules governing the competency of a person to be an administrator are, with a single exception hereinafter noted, the same as those in the case of an executor. With respect to letters of administration, the statute declares that such letters shall not be granted to a person convicted of an infamous crime; nor to any one incapable by law of making a contract; nor to a person not a citizen of the United States, unless he is a resident of this state; nor to a person under 21 years of age; nor to a person who is adjudged incompetent by the surrogate to execute the duties of such trust, by reason of drunkenness, inprovidence, or want of understanding."

The exception referred to is that where dishonesty, when so adjudged by the surrogate, disqualifies a person for the office of executor, is not expressly stated to be a bar to a grant of letters of administration, though by another section dishonesty is made a ground for revoking such letters. The fact that a man sought to obtain property from another by theft or fraud has been held not to be improvidence within the meaning of the statute, though no one can doubt that it is dishonest. The standard of incompetency fixed by the written law can alone be applied in passing upon the qualifications of the applicant to whom that law has given priority. Hence, indebtedness to the estate or personal interest in its administration are not in themselves, nor are old age and physical infirmity, per se disqualifications for the office. The fact that a person having the right to a grant of letters claims any of the property alleged to belong to the estate is not a bar to such grant. The exception made as to the appointment of an administrator differing from the appointment of an executor is noticeable wherein dishonesty is made a ground for refusing letters to an executor, but is not made one of the statutory grounds for withholding letters to an administrator. It would seem reasonable that, if there was any ground that might be urged

with force against such an appointment, it would be the ground of dishonesty shown against the person seeking the appointment. However, it seems to be the theory of the law that the administrator can be tested, and his being required to give a bond will protect the estate from loss, and that he is entitled to his appointment until he is shown to be dishonest, when letters can be taken from him for cause shown; and the remarks of Mr. Redfield upon this subject point out the distinction made between the granting of letters to an executor and to an administrator. In the case of the appointment of an executor it is usual to make such appointment without requiring the giving of a bond, unless something arises in the nature of the case to require his giving security for the faithful performance of his official acts. So that in this case the petitioner is entitled to this appointment unless he is shown to forfeit his right by reason of disqualification upon the grounds stated in the statute; and, the two grounds urged being the conviction of an infamous crime and improvidence, it is only necessary to discuss those two questions in this case.

From the evidence it appears that the petitioner was convicted recently in United States court, at Binghamton, N. Y., of a misdemeanor and fined by the court $50, and an appeal taken; the petitioner insisting that no crime was committed. The facts connected with the conviction of the petitioner and the conviction for the cause charged do not seem to me to be a conviction of infamous crime within the legal construction of the language of the statute. It could hardly be said that a person who had been convicted, upon indictment, of a violation of the excise law, that being a misdemeanor, was convicted of an infamous crime. The statute contemplates the conviction of some crime of a serious nature. Were not that so, it would have left out the word "infamous," and would have provided that a person who had been convicted of "crime" would be disqualified from being appointed administrator. "The signification of the term 'infamous crime,' wherever that expression occurs in our statutes, is absolutely fixed. * * * It is there declared that, 'whenever the term infamous crime is used in any statute, it shall be construed as including every offense punishable with death, or by imprisonment in a state prison, and no other.'" It can hardly be said in this case that the petitioner has been convicted of an infamous crime. Farther than that, the conviction was had in federal court, and not in a court of this state; and there is some force in saying that in order to subject a person to the crime stated in the statute it should be upon a conviction had in the courts of this state. This reasoning finds support in the case of O'Brien v. Neubert, 3 Dem. Sur. 156. I am satisfied that the objection urged against the petitioner as to his having been convicted of an infamous crime is not proven within the legal meaning and construction of the statute.

Has the petitioner been shown to be disqualified by reason of improvidence? The petitioner is a young man of about 35 years of age and for his father has carried on quite an extensive business by way of buying butter, cheese, eggs, and farm produce. Some of the time that business has been successfully carried on and at other times proved to be a loss, and, upon the whole, it cannot be termed a successful business career. Yet the father permitted it to go on during his lifetime up to the

time of his death, occasionally going to see his son, who lived in a neighboring village, and may have been at fault himself in not fully superintending the business; but he seemed to have had confidence in the ability, honesty, and integrity of his son to run the business. The son was engaged in a business of speculation, buying and selling on a rising and falling market. Well-meaning and well-disposed men ofttimes fail in business judgment. Losses have occurred largely to the father by reason of the fact that sales upon credit were made to persons who failed in business and judgments have been obtained against those persons which belong to the estate. Of course, that might arise at times without great fault to the party giving the credit. It is one of the unfortunate transactions in doing business upon the market where prices are daily fluctuating. In order to disqualify a person under the statute, the improvidence or want of understanding must amount to a lack of intelligence. Just what is meant by the term "improvidence," as used in the statute—that is, its legal interpretation—has received considerable attention at the hands of the court. In the case of Emerson v. Bowers, 14 N. Y. 455, Mr. Justice Comstock says:

"All departures in conduct from the principles of rectitude, including all abuses of trust, are unwise and inexpedient, and therefore, in a certain sense, improvident; but they do not constitute the kind of improvidence which the Legislature had in view in these enactments. A very careful, shrewd, and money-making person may be guilty of negligence or abuse in a fiduciary capacity; but such a person is not improvident in the sense of the statute. The words with which the term is associated, drunkenness and want of understanding, are of some importance in arriving at its true construction. The term evidently refers to habits of mind and conduct which become a part of the man, and render him generally and under all ordinary circumstances unfit for the trust or employment in question."

Speaking upon this subject in the case of Coggshall and Others v. Green and Others, in 9 Hun, 471, the court say:

"Moral guilt or delinquency is not a ground for excluding a person from receiving letters, unless he has been convicted of an infamous crime. Improvidence, such as to exclude a party from administration, is a want of ordinary care and forecast in the acquisition and preservation of property; and it has been held that vicious conduct, improper and dishonest acquisition of property, and even loose habits of business, did not constitute 'improvidence' within the meaning of the statute, nor the fact that the petitioner was indebted to the estate."

In Coope v. Lowerre, 1 Barb. Ch. 45, the chancellor said:

"The fact that a man is dishonest, and seeks to obtain the possession of the property of others by theft, robbery, or fraud, is not evidence of improvidence."

And in further commenting upon the subject the court says in that case:

"Taking what the respondent there stated to be true, he certainly was grossly negligent in the management of his property and affairs, and in the contracting of debts, by indorsing for strangers or for men without visible means of payment. But, after all, I cannot bring my mind to the conclusion that he is improvident to such a degree as to render him incompetent to discharge the duty of an administrator."

None of the authorities cited by the contestants' counsel are repugnant to the views above expressed. Neither do I think that the fact that the petitioner purchased in his own name the cheese factories and con-

ducted the same, as he did, sufficient ground to withhold the granting of letters to him. This evidently was done with the full knowledge of the father, and while it would have been better for the father and the son to have done business between themselves as strangers would do business, having accountings from time to time, yet they did not seem to think it necessary so to do, and employed their own means and ways in transactions between themselves.

The giving of checks and the course pursued by the petitioner in the management of the property of the estate after the death of his father is subject to criticism. Sound judgment would have suggested the necessity of immediately taking steps to have had an administrator appointed. The giving of the checks by the petitioner was unwarranted and unlawful, and the honoring of the same by the bank and payment thereof cannot be justified. But a want of understanding of the law in this respect is not in itself a fact which would preclude a person otherwise entitled to letters from the granting of them to him.

The administrator, when appointed, must give a bond conditioned for the faithful performance of his duties as such administrator. With the estate so protected a full accounting can be had. There is no question about the capability of the petitioner to close up the affairs of the estate, and certainly under the required bond he will feel the necessity of so doing. During the lifetime of the father he was considered by him competent to transact the business in the father's name, and, so far as the evidence shows, no criticism or objection ever was raised upon his part of the manner in which he did the business. All things being equal, he now has a better knowledge of the situation of the affairs of that business conducted in the name of his father than any other person and could best close it up. With the taking of the oath that he will honestly and faithfully so do, and protecting the estate by an ample bond, as required by law, it seems to me that a case has not been made by which he can be deprived of the statutory right given to him to be appointed administrator.

An order may be entered that upon taking the required oath and giving a bond as such administrator in the sum of $18,000 letters of administration may be issued to him.

Decreed accordingly.